1840.

Eckford
v.
De Kay.

---

ECKFORD and others, executrix and executors of Eckford, *vs.* DE KAY and wife and others.

Where E., the executor of D. his son-in-law and guardian of his infant grand daughter, received and applied to his own use monies which by the will of D. belonged to such grand daughter unless she should die under age without issue, but which upon the happening of that contingency belonged to her mother in fee in case she survived, and if not to E. himself in fee; and E. having become embarrassed in his pecuniary affairs made a conveyance of certain lands in New-York to his daughter in fee, in trust for J. H. D., the grand daughter, and her heirs and assigns forever, provided she did not die under age without leaving issue; but if she died under age and without issue, then for the sole use of her mother and her heirs and assigns; and the deed recited his appointment as executor of D. and as guardian of J. H. D., and that as such executor and guardian he was in-

debted to the estate of D. in the sum of $27,000 for moneys received by him on account thereof; in consideration of which indebtedness, and of the sum of $10 paid by his daughter, the grantee, he conveyed, &c. *Held*, that such conveyance upon its face was an absolute deed, and not a mortgage; and that it was not an executory trust to sell the premises and raise the $27,000 out of the proceeds thereof for the benefit of D.'s estate; but that the interest created by the deed was an executed trust, and that the deed not only conveyed the absolute legal estate to the trustees but the whole beneficial interest in the whole property to the cestuis que trust.

Where the guardian of an infant invests the property of his ward in real estate in the name of such ward, without authority, or conveys to the ward real estate in payment of a debt due from himself, without the sanction of of the court of chancery, the infant upon arriving at the age of twenty-one has the right to elect to keep the property thus conveyed in lieu of the debt, or may repudiate the conveyance and claim the money and interest.

January 21.    The bill in this cause was filed by the executrix and the executors of Henry Eckford, deceased, who were also the trustees of his real estate under his will, for the purpose of redeeming a lot of land in the city of New-York, containing about nine acres, conveyed by the testator to Mrs. Drake, in August, 1826, in trust for his infant grand daughter, now the wife of the defendant G. C. De Kay; which conveyance as the complainants alleged was intended to be a mortgage merely. G. C. De Kay put in his separate answer, and his wife, who was then an infant, put in her answer by her guardian ad litem. The children of Mr. Eckford, who had a common interest with his executors and trustees in having the conveyance declared a mortgage, were also made defendants, and appeared and answered the bill. And the cause was heard on pleadings and proofs as to all the parties.

*F. B. Cutting*, for the complainants. The conveyance of the 14th of August, 1826, from Henry Eckford and wife to Sarah Drake, set forth in the pleadings, is upon its face, and without reference to extraneous circumstances, a security for the indebtedness therein recited. The facts and circumstances shew that it was not executed upon any negotiation, bargain or treaty for the sale of the premises therein mentioned, but that it was understood, intended and treated by the parties thereto as a security for an ante-

cedent indebtedness, and not as an absolute conveyance. A right of redemption is incident to every contract for the security of a debt by the conveyance of real estate. The complainants ought to be permitted to redeem upon payment of the principal and interest of the debt due by the estate of Mr. Eckford.

*N. Dane Ellingwood,* for G. C. De Kay. The deed in controversy in this cause being absolute upon its face in trust for an infant, no parol defeasance to make it operate as a mortgage can be admissible as against such infant, or against a subsequent purchaser for a valuable consideration without notice. If, however, such parol defeasance were admissible, the fact of its existence is not admitted in the pleadings, nor proved by the evidence. Independent of the evidence contained in the deed itself, there is evidence aliunde before the court to show that such deed was intended to operate absolutely.

*Theodore Sedgwick, jun.* for Janet H. De Kay. This is not a case where parol proof can be admitted to contradict a deed ; or if admitted at all, it must be of the strongest character possible. The testimony of the witness Jane Black must be excluded on the ground of interest. The evidence produced by the complainant is wholly at variance with the allegations of the bill, and must therefore be rejected as irrelevant. If the testimony is admitted, it goes only to prove that the deed in question was a fraudulent conveyance intended to defeat creditors ; and neither the grantor of such an instrument nor his representatives can be permitted to avail themselves of such a defence, as against the grantee or those claiming under the grantee. There is no evidence to support the bill, and it must consequently be dismissed.

THE CHANCELLOR. Although this case involves a very large amount of property, there is, with a single exception, very little dispute in relation to facts. The documen-

tary and other evidence, independent of the disputed fact as to whether there was an actual agreement between the parties to the deed of August, 1826, contrary to the terms of the conveyance upon its face, are briefly these. In October, 1816, Dr. Joseph Rodman Drake, who will be remembered as the talented author of "The culprit Fay," long after the valuable property in dispute in this cause shall have passed into the hands of strangers to his blood and to that of his enterprising father-in-law, intermarried with the daughter of Mr. Eckford. Shortly after the marriage, the doctor having little or no property, Mr. Eckford set him up in business as an apothecary, and conveyed to him two houses and lots in New-York, the one in Chatham Row and the other in Grand-street. The nominal consideration in the conveyance was $15,000 ; but it was in fact an advance to him, or a deed of gift ; the situation of the grantor's property being unquestionably such at that time as to justify him in making such an advance to his son in law, without injustice to his creditors or to other members of his family who might have claims upon his bounty. Dr. Drake died in September, 1820, leaving his wife surviving him, and an only child, now the wife of the defendant G. C. De Kay, then an infant under two years of age. By his will which was made a few days before his death, he bequeathed to his sister a demonstrative legacy of $2500, and to a friend a similar legacy of $400, payable out of the proceeds of his store of drugs and medicines, and to his wife a specific legacy of his household furniture and plate. All the residue of his estate, real and personal, he gave to his daughter in fee, provided she should not die under age without leaving issue ; and if she did so die, then he gave the same to his wife in fee. And in case his wife died first, and the daughter died under age without issue, he then gave the property to his father-in-law in fee ; and if he by reason of death was at that time incapable of inheriting it, then to his children. He also appointed his wife and her father the executrix and executor of his will, and testamentary guardians of the person and estate of

his daughter during her minority. They proved the will and assumed the execution of both trusts; but as the complainants allege in their bill, the personal estate of the decedent was barely sufficient to satisfy the demonstrative and specific legacies. And this was probably so; though it does not distinctly appear what his personal property really was—no inventory thereof having been filed. Nor does it appear what became of the furniture and plate bequeathed to Mrs. Drake, after her death. When Dr. Drake died, his wife and daughter went into the family of Mr. Eckford to reside, and continued there as a part of his family; the former until her death in November, 1828, and the latter until his death about four years after that. As the testamentary guardian of his grand daughter, Mr. Eckford received the rents of the house and lot in Chatham Row until it was sold in 1822, and of the house and lot and Grand-street until the time of his death. He and his daughter Mrs. Drake, as the guardians of his infant grand daughter applied to Chancellor Kent for leave to sell the first mentioned house and lot, and obtained an order authorizing such sale. They sold it in January, 1822, for $20,000, and conveyed it to the purchaser; by which conveyance they also released their respective contingent interests in the property, under the will of Dr. Drake, and she also relinquished to the purchaser her right of dower in the same. The purchase money upon the sale was received by Mr. Eckford; but instead of investing it upon bond and mortgage for the benefit of the infant, and making a return of such investment under oath, as required by the order of the court, and paying over the interest of one third of the fund to Mrs. Drake for her dower during her life, he kept and used the money himself, in violation of his trust as the special guardian under the statute. On the 14th of August, 1826, finding himself embarrassed and in danger of losing all his property by the failure of the Life and Fire Company, of which he was president, and which had issued bonds to a large amount, and being then indebted to the estate of Dr. Drake in the sum of $27,000,

he made the conveyance in question to Mrs. Drake, in trust for herself and her infant child ; and caused it to be put on record, the same day, as an absolute conveyance.

This deed, in which Mrs. Eckford joined as one of the grantors, was probably drawn by Mr. Tillou, one of the complainants, who witnessed and took the acknowledgment thereof, and by whose request it was recorded as appears by the transcript; as the testimony of Mr. Cutting shows that Mr. Tillou was at that time the attorney of Mr. Eckford and attended to his business of that description. That Mr. Tillou did not suppose he had drawn an instrument to be executed by them which was upon its face a mortgage, as now contended for by his counsel, is evident from the fact that it was not registered as a mortgage. It recites the appointment of Mr. Eckford and Mrs. Drake as the executor and executrix of the will of Dr. Drake and the guardians of his infant daughter, and that Eckford, in his capacity of executor and guardian, was indebted to the estate, for monies received by him on account thereof, in the sum of $27,000, in consideration of which indebtedness and of the sum of $10 paid by the grantee, the grantors conveyed the premises to Mrs. Drake in fee, *in trust* for her daughter Janet H. Drake, and her heirs and assigns forever, provided she should not die under lawful age without leaving issue ; but if she should so die under age and without issue, then in trust for the sole use of Mrs. Drake, her heirs and assigns forever. This conveyance therefore, upon its face, is not a mortgage. Nor is it an executory trust to sell the premises and raise the $27,000 out of the proceeds of the sale for the benefit of Dr. Drake's estate ; which would have been a conveyance in the nature of a mortgage, as the grantors in that case would have been entitled to the surplus proceeds of the sale as a resulting trust. On the contrary it was an executed trust, and the deed not only conveyed the absolute legal estate to the trustee but the whole beneficial interest in the property to the cestuis que trust. And so far as Mrs. Drake, the grantee, was interested in the estate of her former hus-

band, or in the fund raised by the sale of the house and lot in Chatham Row, the acceptance of that deed was an absolute bar, upon her part, of all claim upon her father on account of the $27,000 previously due from him to the estate. It would also have had the same effect as to her infant daughter, if Mrs. Drake had obtained the sanction of this court to the arrangement which she made, with her father, for the benefit of that daughter as well as herself. But as the guardians had vested the fund, in which this infant daughter had an interest, in the purchase of this real estate without the previous sanction of the court, she would of course have the right, when she became of age, if this court in the meantime had not made the election for her, to repudiate the deed ; and to claim her share of the $27,000 and interest, from the estates of her guardians, or from their sureties. But if she elected to accept the estate or interest conveyed for her benefit, by the trust deed, which estate became absolutely vested in her as a legal estate by the death of her mother in 1828, that election would of itself be a bar to any claim against the estates of her guardians for any thing received by them from her estate previous to the execution of that deed. (*Overbach* v. *Heermance, Hopk. Rep.* 337.)

It does not appear from any thing in this case whether the interest which the infant was to derive under this conveyance was or was not a fair equivalent for her interest in the fund which formed the consideration of the deed ; as the actual value of the premises in controversy at the date of the deed does not appear. The consideration mentioned in the conveyance from the insurance company in March preceding is $12,000. But whether the premises were actually bought for that sum at the date of that deed, or whether that was the mere consummation of a previous agreement for the purchase does not appear. And the fact that Mr. Smith, the street commissioner, estimates the premises as worth about $70,000 in 1831, and more than treble that sum when he was examined in December, 1835, is pretty strong evidence that Mr. Eckford considered them

a fair equivalent for the interest of his daughter and grand-daughter in the $27,000, due from him to Dr. Drake's estate in August, 1826.

It must be recollected also that as he was giving to his daughter and grand-daughter a greater interest in the property conveyed than they had in the $20,000 which was produced upon the sale of the house and lot in Chatham Row, he would not have been justified in conveying to them property of the value of $27,000 at that time, considering his embarrassed circumstances; as that might have been a fraud upon his creditors. The $20,000 had been raised by the conveyance of his contingent interest in that house and lot under the will of Dr. Drake. He had therefore the same contingent interest in the fund as he had in the real estate sold, under the provisions of the act of March, 1815; (*Laws of N. Y. Sess.* 38, *ch.* 106, § 5;) although the children of Mr. Eckford, whose contingent estate in the house and lot was not affected by the sale, had no interest in the fund raised by that sale. The grand-daughter was at that time but seven years of age; and if the health of Mrs. Drake was infirm the chance that the whole capital of the $20,000 might belong to him by the happening of the contingency contemplated in the will of Dr. Drake, was something more than a mere possibility. And as he relinquished that right and gave to the grantees, together, the whole interest in the property conveyed, so that upon the death of Mrs. Drake her daughter took an absolute title discharged of his contingent claim, a corresponding deduction in the value of the property conveyed in satisfaction of the $27,000 was perfectly proper. The trusts in the deed are in another respect inconsistent with the idea that it was intended to be a mere mortgage, for the purpose of securing to the mother and daughter the interest in the fund which they had before that conveyance was executed. The recital in the conveyance is that Mr. Eckford has received the $27,000 as executor and guardian; and the bill alleges that the personal estate was barely sufficient to pay the demonstrative and specific legacies. The

residue of the fund beyond the $20,000 must therefore have been the infant's two-thirds of the rents of the two houses and lots of which her father died seized, and of her two-thirds of the interest on the monies raised by the sale of one of them, from the time of such sale, with perhaps some trifling addition for a surplus of the personal estate beyond the amount of the legacies. Estimating the house and lot in Grand street at $7000 as stated in the proofs, and the other at the value at which it was sold, and computing the rent to be equal to seven per cent on that amount, it will be seen that the infant's two-thirds of the rents and of the interest on the $20,000 from the death of Dr. Drake to the date of the deed of trust, would amount to about the sum of $7000 exclusive of the widow's dower. And as that fund belonged to the infant exclusively, it would have been manifestly wrong to give a mortgage; which would give to her a mere defeasible interest therein, as in the capital of $20,000, to which she was entitled only to such an interest under the will of her father. But considering the deed as an absolute conveyance, in the nature of a new investment of the whole fund in this real estate, the limitations in the deed of trust are perfectly fair and equitable. For by this new arrangement the infant, as an equivalent for the limitation over to the mother of the whole property in case of the death of the infant without issue before she is of lawful age, obtains her base or determinable fee discharged of the dower, to which her mother is entitled in the $20,000 which forms a part of the purchase money of this estate. And the mother as an equivalent for this right of dower which she relinquishes, gets a more enlarged estate in the premises in case of the death of her child. For the limitation over to her is absolute, by the relinquishment of Mr. Eckford's contingent interest in the $20,000; thereby turning what was before her contingent interest in that part of the fund into an estate or interest in the lands purchased therewith, in the nature of a vested remainder in fee in the whole premises. Having arrived at the conclusion that it is impossible to construe

this conveyance to be a mortgage, from the instrument itself, either independent of or when examined with reference to the various interests in the funds which formed the consideration thereof, it remains to be seen whether there is any legal evidence, beyond the deed itself, to show that it was intended by the parties thereto to be a mere mortgage or security for the payment of money.

Many of the remarks which I have already made are applicable to the case when considered in reference to this question ; for if it was intended to be a mortgage merely, it is impossible to conceive what honest object the parties could have had in taking a conveyance in this form. And, without some further evidence than is contained in this case, I will not for a moment indulge the belief that either of the parties to that conveyance were actuated by the dishonest and fraudulent motive of placing the property beyond the reach of the creditors of Mr. Eckford ; by making what purported to be an absolute conveyance, upon its face, with a secret understanding between him and his daughter that it was to be in fact nothing but a mortgage. In the first place there was no adequate object in making it in that form for the purposes of fraud. For the whole object of securing the lien upon the property for a debt which was actually due, if that was the only object, would have been much better attained without any such fraudulent contrivance, by giving a bond and mortgage in the usual form upon the same property, or rather upon this and the adjoining property ; the whole of which would not have been an unreasonable security for the $27,000, for the time which must expire before the termination of his trust as guardian would take place, if the parties lived so long. On the other hand, if the discerning mind of Mr. Eckford foresaw that this property, although it could not then be sold and converted into money for the payment of his creditors, even for the amount then due to his ward and the estate of his deceased son-in-law, must in a very few years increase in value so as to make a most valuable investment of the fund which he then held in trust for his daughter

and her child, he had an honest and fair motive for giving them the full benefit of the anticipated rise in the value of the property ; which in his then situation there was very little probability that he could honestly retain for himself. And I have looked in vain in this case for any legal evidence to show that Mr. Eckford intended this conveyance to be any thing else than what it purports to be upon the face of the instrument itself.

The evidence of the two females, as to what they supposed they had heard from Mrs. Drake, does not advance a step towards establishing the issue raised in this cause, that this conveyance was intended as a mortgage ; as no inference of that kind can be drawn from the loose declarations they heard from her. And if those declarations amounted to any thing, under the circumstances of this case, it would be to establish the fact that the deed was not given either as a mortgage to secure the $27,000 and interest, or as a conveyance in satisfaction of the debt; but for the mere purpose of defrauding the creditors of Mr. Eckford, by placing the property beyond their reach, for the purpose of preserving it for the use of himself and his family. All that could be drawn from Mrs. Black, in answer to the question of the complainant's counsel as to whether she understood from Mrs. Drake that the property was taken in security, was that it was taken as security for her father. That is, as she afterwards explained it in her further examination, that it was made over in trust for Mr. Eckford, to avoid any difficulty that might arise out of the failure of the Life and Fire Company. Again ; in her cross-examination, she says Mrs. Drake said it was deeded to her in trust for Mr. Eckford and his children. And she afterwards says it was to save the property for his children, as Mr. Eckford believed his creditors would distress him. And Mrs. Rhodes, although she does not speak of any declarations of Mrs. Drake on the subject, says it was understood in the family hat the object of making the conveyance by Mr. Eckford was to secure the property to his family. It is evident from the examination of both of these

witnesses, that neither of them obtained the impression, from what they saw or heard, that Mr. Eckford had in his hands $27,000 belonging to his daughter and grand-daughter, and that the conveyance was intended as a mortgage to secure the payment of that debt. On the contrary, they were laboring under the impression that the conveyance was a mere fraudulent trust, to secure the property for himself and his family, and to place it beyond the reach of his creditors. If such was in fact the intention of the parties to that transaction, it is unnecessary for me to say that neither the grantors in that deed, nor their executors, could come into this or any other court to enforce the execution of the trust, or to obtain any relief against the conveyance.

I am satisfied however, that the inference which might be drawn from this testimony, if it were not explained by other circumstances, would be a libel upon the memories both of Mr. Eckford and of Mrs. Drake. I have no reason to believe the witnesses have testified dishonestly. They undoubtedly heard it talked of in the family that Mr. Eckford had become embarrassed in his affairs ; and that he was in danger of losing his property by reason of the failure of the institution with which he was connected as president, and upon the bonds of which company his name so often appeared. And they undoubtedly knew that a conveyance had been made to Mrs. Drake, which had some connection with the anticipated failure of the grantor. If any thing was said by Mrs. Drake or Mr. Eckford in reference to that conveyance, without a full explanation of all the circumstances, and of the provisions and legal effect of the deed, it was perfectly natural that they should suppose it was given upon a secret trust to place the property beyond the reach of the grantor's creditors. But if a fraud was actually intended, it is wholly improbable that Mr. Eckford or his daughter would have spoken of it thus openly in the presence of these good ladies ; whose memories were taxed, after the expiration of nine years, to fix upon the characters of their deceased relatives the stain of

fraud. In the view which I have taken of this testimony, it is unnecessary for me to examine the question which was raised as to the competency of Mrs. Back as a witness, in favor of the complainants, to increase the fund out of which her legacy is payable under Mr. Eckford's will.

The testimony of Mr. Cutting, as to what was said or done by Mr. Eckford after the execution of the deed, and when Mrs. Drake was not present, was clearly inadmissible as evidence in favor of the complainants. If Eckford himself had filed this bill in his lifetime, it is very certain he could not have given in evidence his own acts or declarations, to contradict or explain the deed which he had previously executed. And if he could not have introduced such evidence, it is equally certain that it is inadmissible upon this bill, filed by his executors and trustees. As this testimony was objected to, it could have no influence in the decision of this cause if it was in other respects relevant and proper. The only inference however which I should draw from exhibit A., even if it was legal evidence, would be that Mr. Eckford had either forgotten that the title to the property conveyed by the trust deed was not limited over to him, in the event of his daughter and granddaughter both dying without issue, in the same manner, as the original estate was limited under the will of his son-in-law. And that he therefore might have a residuary or contingent interest in the Love Lane property; as he had in the Grand-street house and lot, which immediately follows it in his memorandum. Again; as the consideration of that deed, or the greatest part thereof, was the proceeds of the estate of his son-in-law, in which the grantor had a contingent interest, a man who was not a lawyer might have supposed there might be a resulting trust therein, which might belong to him in the event contemplated in the will of Dr. Drake. Or what is more probable than either of these conjectures, his lawyer may have informed him, at the time the trust deed was executed, as it was his duty to do, that that the arrangement which he then made for the payment of the debt to his daughter and grand-daughter, by this in-

1840.

Eckford
v.
De Kay.

vestment, would not be absolutely binding on the latter; unless it was subsequently sanctioned by the chancellor, or by the infant ward herself when she became of age. He therefore had a contingent interest in that property which it was proper to convey, in a general assignment for the benefit of his creditors. The knowledge of the existence of such a right on the part of his grand-daughter may probably account for the fact, that in making his will, in 1831, he fixed upon the 1st of February, 1840, a few days after the time when she would arrive of full age, and be bound to make such election, as the period for the sale and distribution of his property among his legatees and devisees.

But the idea that the trust deed was intended as a mortgage merely, is wholly inconsistent with Mr. Eckford's declarations to Mr. Griffin, a year or two after that deed was executed; while the witness was negotiating for the lease of this property. And when he subsequently sold some of the adjoining property to Cutting and Tillou, and reserved a small gore for the purpose of squaring out the lots on the premises now in controversy, it is wholly incredible that he should have taken the trouble of having that gore conveyed absolutely to his grand-daughter, if he supposed he had a redeemable interest in the tract conveyed by the trust deed. The conveying of that strip to her, instead of retaining the title in himself, would render it impossible to obtain his object of squaring out the lots, either upon the redemption or foreclosure of the mortgage; she being then but ten years of age, and therefore incapable of uniting the two pieces together if her interest under the trust deed was a mere mortgage interest. On the contrary, if the trust deed was intended to be absolute, as upon its face it purports to be, her interest in the two pieces would be the same. For the transfer of the gore took place in 1829, after the death of her mother, and when her title to the premises in question had become a perfect fee, by the union of the legal and equitable interests of her mother and of herself in the same person; she being the heir at law of her mother.

It is impossible therefore to resist the conclusion that Mr. Eckford in April, 1829, did not consider himself as the owner of the premises in controversy, and that his grand-daughter had a mere chattel interest therein, as a security for money. The fact that Mr. Eckford received the rents of the premises, and paid the taxes and assessments thereon, down to the time of his death, is not inconsistent with her right as legal owner. For it was his duty to do so, as her testamentary guardian under the will; especially after the death of her mother in 1828, when he became the sole guardian of her person and estate. Even if he had not been the legal guardian, the relation in which he stood to her, as her natural guardian, after the death of both her parents before she was nine years of age, would itself have made it a moral if not a legal duty for him to have done the same thing.

As the will of Mr. Eckford is not before me for construction in this case, I have purposely declined expressing any opinion thereon until it shall come before me in a form in which the construction which I might give to it would be subject to review in the court of dernier resort; if either party should be dissatisfied. It may be necessary, too, in order to give a proper construction to that will, to have the testimony of some persons who are not competent witnesses here; to enable the court to apply the language of the testator to some of the subjects to which that will relates.

The decree in this case must declare that the conveyance in question is not a mortgage, and the complainants therefore are not entitled to redeem. But that the same is to be deemed a full satisfaction of the $27,000 and the interest thereon, unless the defendant George C. De Kay, and his wife who has now arrived of full age, shall within 20 days after the entry of the decree, elect to receive the $27,000 with interest thereon, and to re-convey the premises to the complainants as the executors and trustees of Mr. Eckford; to be disposed of according to the directions in his will. And in case of such election, written notice

thereof, under the hands and seals of G. C. De Kay and wife, agreeing to convey the same upon the terms aforesaid, subject to such equitable adjustment as this court shall make in relation to such advances as have heretofore been made under its direction, and duly acknowledged by them in the manner prescribed for conveyances of real estate, must also be served upon the complainants' solicitor, within the twenty days.   This decree is also to be without prejudice to the rights of either party in relation to any advances, or liens, which have been made, or created, during the pendency of this suit, by the parties, or either of them, or by their guardians.

And as this suit has been prosecuted for the benefit of the devisees and legatees under Mr. Eckford's will, it appears to be a proper case to direct the costs of all the other parties, as well as the costs of G. C. De Kay and of the guardian ad litem for his wife, to be paid out of the estate of Mr. Eckford, in the hands of his personal representatives.