Williams *v.* Williams.

CHARLES J. WILLIAMS, appellant,

*v.*

ELIZABETH WILLIAMS, respondent.

A testator gave $5,500 out of his bonds and mortgages for the support of his daughter, and directed the trustee (his son) to keep the money invested, and to pay her the interest, and so much of the principal, as might be needed for her support. The trustee bought a house with the money, and accounted only for the rents derived therefrom, which were less than the fund would have produced if invested at legal interest.—*Held*, that he must also account for the difference between the rents received by him from the house, and legal interest on $5,500.

Appeal from order of Essex orphans court.

*Mr. G. F. Tuttle*, for appellant.

*Mr. Boggs*, for respondent.

Williams *v.* Williams.

THE ORDINARY.

The appellant brings before this court for review an order of the Essex orphans court, made on his accounting before it as trustee under his father's will. He objects to all the surcharges made against him therein. The order requires him to account for interest at the legal rate upon a fund of $5,500, which, by the will, he was directed to invest, and keep invested, for the benefit of his sister Elizabeth, for her life, and which he converted into real estate in 1879, and for the net rents whereof only, amounting to less than legal interest on the fund, he has accounted since that time, and it charges him with the money received by him from the sale of certain articles of household furniture, specifically given to her by the will, and which he has sold; and it directs that, in his charges for her support, he be allowed only the amounts actually paid by him, either by the appropriation of rents or otherwise.. He also objects to the requirements of the order that he pay the costs of the accounting out of his private estate, and that a counsel fee of $75 be paid out of the fund to the counsel of the exceptant, his sister Elizabeth. His objection to the counsel fee is that it is too large in amount.

The third clause of the will is as follows :

"I give and bequeath unto my son, Charles J. Williams, Jr., as guardian of my daughter Elizabeth, $5,000 from my bonds and mortgages, for her support and maintenance, and authorize and empower him to re-invest and keep invested the same, and pay the interest arising therefrom to her during her natural life; and in case the said interest should not be necessary [sufficient] for her comfortable support, I hereby authorize him to pay her, from time to time, such sum or sums as in his judgment she may require, from the principal. In case my daughter Elizabeth should die leaving no issue, I give and bequeath to my son Charles the sum of $500 out of the said sum of $5,000, or the remainder thereof, to be his——heirs and assigns, forever; and the remainder I give and bequeath to my two sons, Charles J. Williams and William H. Williams, to be equally divided between them, share and share alike. But if my said daughter Elizabeth should marry and have children, heirs of her body, I then and in that case give and bequeath the said sum of $5,000, or what shall remain thereof, to her children, to them, their heirs and assigns, forever."

By a codicil, he provided as follows :

"In case my bonds and mortgages are insufficient to pay the above legacy of $5,000 to my said daughter Elizabeth, I hereby authorize and order my executors to take any other personal property of which I may die seized ; and if there should not be personal property sufficient, then I order and authorize my said executors to sell as much of my real estate as to make the said sum of $5,000 and to pay the same over to her guardian above named, to be invested by him to the best advantage for her support, as above stated.  I hereby give and bequeath to my said daughter Elizabeth, in addition to the above sum, the further sum of $500, to be paid to my son, Charles J. Williams, Jr., as guardian, to be invested by him for her benefit, as above stated."

He appointed Charles and William executors, and they both proved the will and assumed the executorship.  The $5,500 were received by the appellant in January, 1871, partly in seven per cent. bonds and mortgages, and partly in a savings bank deposit producing like interest.  It appears that in April, 1872, Charles and William bought a house and lot in Newark, for which they paid $4,900, borrowing $2,900 of the trust funds to enable them to make the payment.  For the money so borrowed a seven per cent. mortgage was given by them to Charles as guardian of Elizabeth.  They subsequently spent $300 on the property, and in 1879 conveyed it on the trust hereinafter mentioned to Charles, for the consideration of $5,200.  He says that after this latter conveyance he spent $300 of the trust funds upon the property.  The deed to him was on the following trust declared therein :

"To collect and receive the rents, issues and profits thereof, and out of the same to pay the taxes and all the other legal charges upon said premises from time to time, and all expenses for necessary repairs and reasonable insurance upon the same, and, in the next place, to pay the remainder of said rents, issues and profits, or so much thereof as may be necessary, to and for the support of Elizabeth Williams, the sister of the parties hereto, during her natural life, or until said premises shall be sold and conveyed ; and upon the further trust to sell and convey said premises at any time when said Charles J. Williams shall think best to do so ; and upon any such sale being made, or upon the decease of said Elizabeth, then to dispose of the proceeds of any sale, if the same shall be made, or of the said premises hereby conveyed, according to the trusts and directions contained in the third clause of the last will of Charles J. Williams, deceased, the father of the said Charles J. Williams and William H. Williams."

The trustee testifies that he and his brother bought the prop-

erty for an investment for themselves, and when asked how " he came to change it to an investment for the estate," answered that he had borrowed some of the money from the estate to use in another way, and the financial panic came on, and to secure the estate he and his brother conveyed the property to him as guardian. The net rents of the property appear to have been only about from three to four per cent. per annum. Elizabeth did not consent to the investment. She is, in fact, a person of weak mind, incapable of consenting. The trustee had no right to invest the fund in real property without the direction of a competent court. *Eckford* v. *De Kay, 8 Paige 89 ; Perry on Trusts* § *458.* In the absence of such direction, it was clearly his duty to invest on such securities as are recognized by this court and the court of chancery as proper for the investment of trust funds. They are securities of the United States and of this state, and mortgages of real estate. *Lathrop* v. *Smalley, 8 C. E. Gr. 192 ; Tucker* v. *Tucker, 6 Stew. Eq. 235.* It is manifest, from the language of the will, it may be remarked, that the testator intended that the fund should be invested, and kept invested, on interest-producing securities; and it is also clear that the investment in the land would not have been made, had it not been deemed necessary in order to protect the fund against the loss from the illegal act of the trustee in using part of it for his own purposes. It is urged that so long as Elizabeth receives her support out of the income of the fund she has no right to complain. But obviously that position cannot be maintained. It is her right to have the fund duly invested, and to have the surplus interest, if any, added to the fund for her benefit, in case of need; and the trustee is bound to account accordingly. He is chargeable with legal interest on the fund during the time it was invested in the land. Due allowance should be made him with respect to any reasonable period of time before the purchase of the land during which the funds were in his hands awaiting an opportunity for investment. There is no satisfactory evidence on that head, however. It appears that she boarded with William, and that when the income from the property proved insufficient to pay for her support, William and Charles supplied

the deficiency out of their own funds; that is, each bore one-half of it.

By the will the testator gives certain household furniture to Elizabeth, and directs that, if there should be more of it than she should require, Charles sell the surplus, with her consent, and invest the proceeds for her benefit. The trustee should have charged himself with the proceeds of the sale of furniture, and claimed credit for the furniture purchased therewith. If he did not use all the money in the purchase of new furniture for his sister, he is chargeable with the balance. He testifies, however, that he sold the furniture because it was old, and bought new in its place for Elizabeth to quite the same amount. As to the charges for support of Elizabeth, inasmuch as the trustee is chargeable with interest on the fund at the legal rate, he should be allowed reasonable payments for her support; and they should not, under the circumstances, be confined to the money actually paid to his brother therefor. It appears, as before stated, that the deficiency in income for her support was met by him and his brother, each bearing an equal share thereof. It is but just to allow him the full amount in the restatement of the account, seeing that he is to be charged with legal interest on the fund. Under the circumstances, the action of the court in charging him with the costs, is right, and the amount of counsel fee awarded is not excessive.

The result is, that the order appealed from is sustained as to the charge of interest and as to the costs and counsel fee, and is reversed as to the charge for the proceeds of the sale of the furniture and the allowance to be made for support. No costs of the appeal will be awarded to either side.