WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SUR-
ROGATE.—September, 1883.

CROMWELL v. KIRK.

*In the matter of the estate of* GEORGE W. RICHARDSON,
*deceased.*

One who knowingly interferes with the estate of another not *sui juris* ac-
quires no rights as against the latter, by either express contract or pre-
sumptive acquiescence.

Any person who takes possession of an infant's property takes it in trust
for the infant, and will be held to the same degree of responsibility as
if he had been formally appointed to the office of guardian.

Where a general guardian has converted his ward's personalty into realty,
the ward, on coming of age, may elect whether he will take the realty
or the money.  But where the guardian, after effecting such con-
version, and treating the ward's property as his own for a number
of years, dies during the ward's minority, all that can properly be taken
into consideration, on the accounting of his executor, is the rents,
taxes and repairs of such realty.

On such an accounting, had at the instance of the deceased guardian's suc-
cessor, it is the duty of the Surrogate's court, and that court has juris-
diction, to trace out and recover for the minors the property to which
they are legally entitled, and see that it is placed in the hands of a
proper custodian.

A Surrogate's court has no power to direct the satisfaction, of record, of a
mortgage upon the real property of an infant whose estate is subject to
its jurisdiction.

A general guardian will be compelled to pay the costs of an accounting
where, although ignorantly and in good faith, he has pursued a course
which has rendered the litigation necessary to enable the ward to re-
cover his rights.

The proper rule of apportionment, as between life tenant and remainder-
men, of expenses attending upon real property,—as ordinary taxes. suc-
cession tax, ordinary and extraordinary repairs, insurance premiums,
etc., etc.,—declared.

THIS was a proceeding by David Cromwell, as general
guardian, to compel an accounting by Harford B. Kirk,

as executor, etc., of George W. Richardson, who, in his lifetime, was the general guardian of Annie M. and Louis P., his two children by Ada E. P. Richardson, his first wife. It appeared that in February, 1867, said Ada received from the administrator with the will annexed of Lewis Perry, deceased, formerly of Claremont, New Hampshire, certain money and other assets, as a part of her legacy, as supposed, amounting in all, less the Government tax, to $4,768.21. She took, in payment of a part of this amount, a note of her husband, George W. Richardson, amounting, with the accrued interest, to $1,111.76, and another, amounting, with interest, to $111.95; which notes formed a part of the assets of the estate of Perry at the time of his death. George W. Richardson, the husband, joined with his wife in receipting for these moneys. Mrs. Richardson and her children were also tenants in common with the widow of Mr. Perry, under his will, of certain real estate in Claremont, and she received, as her share of the proceeds of sale thereof, the sum of $2,565. She also became vested under said will with a life interest in certain western lands, with remainder to the children; and her husband, after her death, realized therefrom $1,651.27, making the whole amount received from Perry's estate $8,984.48. In 1867, Mrs. Richardson purchased a lot in Morrisania and erected a house thereon at a cost of $7,200, the contracts being made by her husband, and the money being paid by him. A part of this amount, to wit, $4,000, was raised by a mortgage upon the premises, executed by the wife (to whom the deed was given) and her husband. After the death of Mrs. Richardson, her husband paid the mortgage, taking an assignment thereof to himself. This

house she occupied with her husband, who was in business in the city of New York, and with her family, until February, 1870, when she died intestate. In June, 1871, George W. Richardson was appointed the general guardian of said minors, and continued to occupy the Morrisania property down to May, 1880. In 1872, 1873 and 1881, he received the proceeds of sales of said western lands. In August, 1881, he died, leaving assets, as appeared by the inventory filed, to the amount of $17,500. During all this time Mr. Richardson was a member of the firm of H. B. Kirk & Co., doing business in the city of New York. This firm was formed in 1864, at about the date when he borrowed the $1,000 of Mr. Perry, for which he gave the note afterwards received by Mrs. Richardson; and he contributed $2,000 as his share of the capital of the firm. In a preliminary decision made in this matter (*ante, 383*), it was determined that, under the will of Perry, which devised and bequeathed the property to Mrs. Richardson and her child or children, she took an interest for life only, with remainder to the children. Thereupon, the executor filed no formal account, but produced a bill of items for expenses incurred in and about the Morrisania property, both before and since the death of Mrs. Richardson and down to 1880.

M. G. HART, *for general guardian.*

W. J. OSBORNE, *for executor.*

THE SURROGATE.—In the view which I have heretofore expressed (*ante, 383*), Mrs. Richardson had only a life interest in her share of Mr. Perry's estate, and no part of it should have been delivered over to her by his adminis-

trator other than the income; but because he did so deliver it no reason is furnished for depriving these minors of their interest in remainder. That the parents actually took it did not make it theirs, but their liability is found in the fact that they became possessed of it. A part of it went into the house and lot, and another part into the business in which the father was engaged.

From the very nature of the case, one who knowingly interferes with the estate of another not *sui juris* should be able to comprehend that he will acquire no rights as against the latter, by either express contract or presumptive acquiescence. Hence it was held, in Quinton v. Frith (*Irish R., 2 Eq., 396*), that a person entering upon the estate of an infant, whether the infant has been actually in possession or not, will be fixed with a fiduciary position as to the infant, whenever he is the natural guardian of the infant (3 Redf. on Wills, *2d ed., 451*). *Any person* who takes possession of an infant's property, takes it in trust for the infant; and the person will be held to the same degree of responsibility as if he had been formally appointed to the office of guardian (id., *n.*).

George W. Richardson was the natural guardian of these minors, and as such received, through his wife, the amount of the two notes, which was then $1,223.71. It does not appear that he ever paid it to his wife, and the probabilities are that he retained it in his business, where it had been so long employed.

All the actors, probably supposing that Mrs. Richardson was the absolute owner of the interest bequeathed and devised to her by Mr. Perry, thought it right that she should receive the assets and thought that she had

the absolute title to the realty.  She thus received, of the personalty, $4,768.21, and of the proceeds of the sale of the realty at Claremont, $2,565,—in all, $7,333.21. The house and lot at Morrisania cost $7,200, being very nearly the amount received by her from Perry's estate. It is true, a mortgage of $4,000 was placed upon the property, but this was subsequently paid off by Richardson, presumably out of funds belonging to the minors, or to which they were entitled.  We have nothing more to do, therefore, with that mortgage; and we have left, as belonging equitably to the wards, that house and lot.  This was a conversion of the personalty, and a re-conversion of the proceeds of sale of a portion of the realty, into real estate, by the father or mother, or both, who assumed a fiduciary capacity towards the wards.  This brings the matter within the rule laid down in Eckford v. De Kay (*8 Paige, 89*), that, if a guardian or other trustee convert an infant's personalty into real estate, the ward, on coming of age, may elect whether he will take the realty or the money.  As the wards cannot now make the election, all that can properly be taken into consideration here, in reference thereto, are the rents, the taxes and the repairs.  The executor of Mr. Richardson presents a bill for taxes, expenditures, etc., relating to this house and lot, amounting to $5,785.21, of which $2,211.63 accrued during the lifetime of Mrs. Richardson. She must be regarded as the life-tenant of the property, and was, therefore, liable for taxes and ordinary repairs. At the same time, I think the excise tax on succession, being $120, should be apportioned between the life-tenant and remaindermen, as should also the items for insurance premiums, flagging, building fence, lightning rods, mar-

ble mantels, and trees and vines, because they are apparently for the benefit of the inheritance (Peck v. Sherwood, *56 N. Y., 615*). These items amount to $572.52; but, as I am uninformed at present of the age of the life tenant, the apportionment cannot now be made, but can be done hereafter, when the necessary facts shall be ascertained. There is no proof in regard to any of the items, other than what is furnished by the vouchers. The rest of that bill, to the amount of $1,639.11, is therefore disallowed.

Mr. Richardson continued to occupy the real estate from the death of his first wife for ten years, having remarried during the period, and then it was leased in 1880, 1881 and 1882 to other parties. I regard his estate as liable, therefore, to the wards for the rents from 1870 down to 1882. From the proofs on the subject, the rental value during the ten years may fairly be fixed at $375 per annum, and the actual amount received therefor during the last three years was $1,210, making in all $4,960, with which his estate is chargeable on that account. He also received net proceeds of sales of western lands, amounting to $1,651.27, and $133.21, being the difference between the cost of the Morrisania property and the amount received by him and his wife, from the Perry estate in 1867, making the gross liability $6,744.48, besides interest. From this, are to be deducted his proper charges and expenses as guardian, for taxes, insurance, repairs, etc., with interest. The amount of the bill presented by the executor for all expenditures made by the guardian, from 1871 to 1881 inclusive, is $3,583.58. Objections are made to items aggregating about one half of this sum. While it is the duty of a guardian to keep the

real property of his ward in repair, to be allowed for such expenditures he should, in some way, show that the repairs were necessary to the preservation of it.   To use any of the minor's money in making permanent improvements upon the realty, would be a conversion of personalty into real estate, and is not authorized, and cannot be allowed (Hassard v. Rowe, *11 Barb.*, *22;* Bellinger v. Shafer, *2 Sandf. Ch.*, *297*).   It seems the guardian built a bath room and also a new room and a conservatory, at a considerable expense, as is gathered from the bills and the vouchers; besides making other large expenditures for items, the necessity of which is far from being made apparent.   For these reasons, I sustain the objections to the various items indicated, amounting to $1,803.11, and allow the sum of $1,780.47, with interest.

Although no question as to the power of this court to determine the matters submitted has been raised, yet it has received due consideration.   I think the duty of the court is to trace out and recover for the minors the property to which they are legally entitled, and to see that it be placed in the hands of a proper custodian.   Their mother having died intestate, and the legal title to the Morrisania property having been in her, these children, at all events, are now seized of it as her heirs-at-law. But, as I have endeavored to show, they were, from the beginning, the equitable owners, subject to their mother's life estate.   The mortgage for $4,000, in the hands of the executor of their father's will, however, I have no power to direct to be satisfied of record.   That belongs to a court of more extended jurisdiction than this possesses.

I think the petitioner is entitled to costs out of the estate represented by the executor.   While it may be true

that the testator supposed his wife to have been the absolute owner of the property devised and bequeathed to her, his ignorance on that subject will not excuse him for pursuing a course that rendered this litigation necessary in order to enable his children to recover their rights.

A decree will be entered according to the views expressed above.