Stanard, J.
The fate of this case depends on the fact and validity of the payment, alleged by the defendant Josiah Jackson to have been made, of the annual instalments intended for the daughter Susanna.
It requires but a brief examination of the record, though the mind of the enquirer be disposed to make the most charitable construction, to find the most convincing proof that the defendant Josiah Jackson, in his efforts to sustain the defence, has been betrayed into gross inconsistencies, has made many misstatements, has in numerous instances duplicated his claims of credit, and has put forward unfounded pretensions or suppressed material facts. But all this, though it may cover the defence with suspicion, does not necessarily doom it to unconditional condemnation. The judicial annals of this and other countries are not without examples of attempts to vindicate innocence by falsehood, nor of a resort to fraud and misstatement to sustain claims or defences intrinsically sound and sustainable *117 without such auxiliaries; and though a court of equity may refuse its'aid to a plaintiff who has resorted to fraudulent misstatements or suppressions to obtain it, it has no right to inflict the forfeiture of a defence, if otherwise good, because resort has been attempted to such reprobated auxiliaries. Such an infliction would be a punishment of the delinquent, not perhaps undeserved, but would not fulfil the appropriate function of a court of equity, which is to administer justice between the parties. The detection of misstatements, inconsistencies, and efforts to deceive by concealing facts or by unfounded suggestions, while it justly subjects the defence to strict scrutiny, should also warn us to conduct the scrutiny with jealous caution against the prepossessions that such detection is calculated to produce.
That the traits I have suggested as characterizing the defence have not been overcharged, a short survey of the facts developed by the record will evince. [Here the judge went into some specifications, to shew the general traits which mark and cast suspicion on the defence; and he then proceeded as follows :]
Without adding to the number of these specifications, which might easily be done, I proceed to the enquiry how far the evidence in the record affords satisfactory proof of valid payment, in whole or in part, to either or both of the executors, of the annual sums charged on the devisees in favour of the daughter Susanna.
[The judge examined first the evidence of payments to, or claims on, the executor Samuel. If the receipt F. was genuine, he considered the fair construction thereof to be, that it was for a small sum as a balance of the 6000 dollars payable to John and Samuel Jackson, as contradistinguished from the 5000 dollars to which the daughter Susanna was entitled. And upon the whole evidence in relation to the said payments or claims, his *118 conclusion was, that they were not only not shewn to be for Susanna's annuity, but were affirmatively shewn to be on a different account, and ought not to affect the claim of her representatives on the devisees.
• Next investigating the alleged payments to the executor John, the judge identified the item of 1763 dollars 13 cents, attempted to be sustained by Neave's deposition, with the nails and brads mentioned, in two receipts of John Jackson separately charged, the effect of which identification was to limit the charge, at all events, to the said sum of 1763 dollars 13 cents, and not permit any additional charge on account of the receipts. And then he proceeded as follows:]
To the decision of the question touching the efficacy of the transactions of the devisee Jackson with the respective executors, as payments or discharges of the instalments to which the daughter Susanna was entitled, it was deemed by the counsel, especially on the former argument of this cause, important to determine preliminarily the quality and extent of the powers conferred by the will on the executors, over the fund provided by the charge on the devisees. On behalf of the appellants it was contended, that the executors took this fund as personal property, and that their power over the fund was as plenary in all respects as it was over the personal property of their testator. On the other hand it was contended, that this fund was the issue of real estate dedicated by the will of the testator to a specific object, not forming a part of the personal estate of the testator, and not chargeable in the hands of the executors with debts, or other liabilities of personal estate; and that the power of the executors was in the nature of a trust, which could be duly exercised only by their joint act. In my view, it is not necessary to the decision of the case that this question should be solved. I may say however, in passing, that I have examined the question with care, and that that exami *119 nation has left a deep impression that the general proposition, that this fund is identified with the personal estate of the testator, and passes to the executors subjcct in all respects to the executorial power over personal estate, and to all the liabilities of such estate, cannot be maintained. The just construction of the will, taking all its provisions together, is, according to my impression, that the legacy is not a general one, payable out of the personal assets, with the charge on the land as an auxiliary security, but is a legacy to be paid by the proceeds of the charge on the land, and that the charge supplies the only fund for its payment. The consequence of this construction is, to divest the fund of the quality of personalty ascribed to it by the appellants’ counsel. No proposition is better settled than this, that a devise of real estate to executors to be sold, or that real estate be sold by executors, for the payment of legacies, does not impress on the proceeds of sale in the hands of the executors the quality, or subject them to the liability, of personalty : and it would be difficult to distinguish between a fund issuing from realty by a charge and by a sale, both coming to the hands of the executors for the same specific purpose. In respect to such a fund, the most that could be said is, that when the will directs it to the hands of persons nominatim, who are not executors, the construction is that the power is to be exercised in the terms and manner it is given, that is, jointly, and it would not even survive; but when it is given to executors, the power is expounded by the nature of the executorial power, and as that is a joint and several power and survives, the inferred intention is that such should be the quality of the power under such a disposition, and the construction gives effect to this inferred intention. In such case, the executors take the power, not virtute officii, but ratione officii. The question, however, touching the validity of the alleged payments, will be considered on *120 the hypothesis that the power, in respect to the receipt of the instalments charged on the land for the daughter Susanna, was as plenary as that of executors over .. personal estate.
Thus considering it, one general principle need only be premised ; and that is, that parties dealing with an executor or trustee, and co-operating with him in the misapplication of assets or trust funds, in violation of the duties of the executor or in breach of the trust, cannot use such transactions as a defence against the claim of creditors, legatees or cestuis que trust: and the application of assets or trust funds by the executor or trustee to the discharge of his individual responsibilities, is, unless the estate or trust be indebted to the executor or trustee, a violation of duty or breach of trust. This principle rests on the firmest foundation of authority, and indeed is not contested.
The evidence to sustain the first charge of 902 dollars 25 cents, shews a liability of John Jackson to Jackson & Sharpless, arising from receipts under an authority which originated at a date antecedent to the death of the testator, and which therefore could have no reference to the rights and responsibilities resulting from the will. Standing on the simple fact of the receipt of the funds of Jackson & Sharpless (and that is all that is proved), it made John Jackson indebted to Jackson Sf Sharpless, and without some farther posterior agreement between Jackson Sf Sharpless and John Jackson, could not be set off even against a claim of John Jackson on Josiah Jackson. But suppose there was distinct proof of such posterior agreement, that these receipts should be considered a payment on account of the annuity which the executors were to receive for the daughter Susanna; it would be an application of the instalments for the daughter to the discharge of a debt of John Jackson to Jackson Sf Sharpless, and therefore, on the general principle premised, wholly invalid. Be *121 sides, the claim on this transaction as connected with the liabilities of the devisees, is exposed to strong suspicion, if not certain condemnation, on another ground. The account exhibited with the answer,- professing to embrace all the claims of Josiah Jackson connected with those of the executors or either of them, does not include this, though it comprehends all the other claims resulting from the transactions with Neave & son; and while this shews a liability of John Jackson to Jackson Sf Sharpless in its origin, no account of any kind between them is exhibited. The implication is, that there were accounts between those parties, and that they have been suppressed. To my mind it is clear that this item ought to be excluded, not only as a credit against the instalments to which Susanna was entitled, but from the accounts between Josiah Jackson and the executors, or either of them.
Having identified the item of 1763 dollars 13 cents with the nails and brads mentioned in the two receipts of John Jackson before adverted to, the delivery of these nails and brads is not referrible to the general authority of Josiah Jackson to Neave & son to honour the calls of John Jackson (spoken of in Neave's deposition), but to the authority derived from John Jackson's possession of the receipts. The effect of the receipts was to create a personal liability of John Jackson to Josiah Jackson, for the nails or the proceeds of them. There is no proof, or attempt to prove, that this original liability has, by subsequent agreement, been changed. Standing on that footing, had John Jackson, as executor, sued for the annual instalments, this personal demand on him could not be set off, and had he been sued on it, he could not have set off the claim for the annual instalments. But suppose the subsequent agreement that this personal liability should pro tanto be a satisfaction of the annual instalments ; it would be an application of the annual *122 instalments to the discharge of the debt df one of the executors, and, on the principle before stated, invalid.
The debt of John Jackson to Neave & son, charged to Josiah Jackson, is confessedly within the principle aforesaid, and invalid as a payment or discharge pro tanto of the annual instalments.
'The draft of Josiah Jackson on Neave, on nail account, in favour of John Jackson, is on its face a transaction between the said John Jackson and Josiah Jackson, having no connection with the estate of Samuel Jackson. It is a matter between them personally. It was not paid by Neave under the general authority spoken of in his deposition, but on the specific draft of Josiah Jackson. All the other items with which it is associated, arise from dealings shewn to be personal to the parties, and in their own individual names ; and that still more distinctly impresses on it the character it bears on its face; and upon sound principles of evidence, that character only can be safely ascribed to it.
We thus ascertain that not one of the charges drawn from Neave's account, and attempted to be sustained by his deposition, can be considered as a payment to John Jackson of, or on account of, the annual instalments to which Susanna was entitled.
The other pretended payment to John Jackson is attempted to be sustained by a receipt, which is not authenticated by proof; and if it were, it is like the two other receipts before mentioned, and, as a payment, would share the same fate.
The conclusion from a scrutiny of the alleged payments is, that not one of them can be applied to the yearly instalments for S'usanna. A general survey of the whole matter in proof fortifies this conclusion. Excluding the item of 902 dollars 25 cents received by John Jackson for Jackson & Sharpless, (as it ought to be, for the reasons before given,) from the transactions between Josiah Jackson and the executors and each of *123 them, the amount of all the claims of Josiak Jackson on either and both of the executors, on all these transactions, established by adequate proof in this case, falls short of 6000 dollars, unless resort be had to receipt F.; and with the aid of that receipt, only reaches that sum. I have forborne any special notice of that receipt, or to ascertain the extent or depth of the shadow that the circumstances under which it appears in the record should cast on the defence. I am satisfied that in whatever light it is viewed, whether as genuine or antedated or fabricated, it cannot aid the defence; and all that the defendant can with any reason hope for, is that it should not prejudice it.
The three judges concurred in opinion that the de - cree should be affirmed.