## Staunton.

## McALLISTER v. BODKIN ET ALS.

### October 16, 1882.

1. BANKRUPT—*Homestead—Parties—Assignee—Judgment creditors—Case at bar.*—M was adjudged a bankrupt and discharged in 1873. He claimed as his homestead certain land, which the bankrupt court allotted him, but without notice to his creditors, who were lienors by judgments recovered in 1857. Those creditors in 1878 filed their bill in the State court to enforce their liens on said land, but did not make T, who was the assignee in bankruptcy of M, a party. M demurred, answered, and pleaded that the enforcement of the judgments was barred by the lapse of twenty years between their date and the filing of the bill. The demurrer was overruled and decree of sale entered, but the commissioner of sale was not directed to give the usual bond. On appeal by M—

HELD :

    1. Under the bankrupt laws of the United States the legal title to the bankrupt's homestead, does not vest in his assignee ; and if it does vest, *eo instante* the homestead is allotted him, the legal title thereto reverts to him. Therefore the assignee had no interest in the subject of this suit and was not a necessary party.

    2. The assignee had not even a reversionary interest in the subject of this suit, as by Code 1873, p. 1171, ch. 183, § 8, if the homestead be not aliened in the householder's lifetime, after his death it continues for benefit of his widow and children, until her death or marriage, and after her death or marriage until the youngest child becomes twenty-one years of age ; after which it passes to his heirs or to his devisees, not subject to dower, but subject to all his debts. In no event does it pass to his assignee in bankruptcy.

    3. Judgments obtained and docketed, and liens acquired before the debtor is adjudicated a bankrupt, may, after he is discharged as such, be enforced in the State courts at the instance of persons who were not parties to the bankrupt proceedings, on lands owned by him before his adjudication and allotted him for his homestead.

4. The decree of the State court for sale of the land does not impinge the decree of the bankrupt court allotting the land to M for his homestead, because the judgment lienors were not parties to the proceedings wherein the latter decree was rendered.

5. The right to enforce the judgment liens was not barred, as, after deducting the time between the 17th of April, 1861, and the 1st of January, 1869, there cannot be computed twenty years between the date of the judgments and the filing of the bill in this cause.

6. The statute requires a bond of commissioners of sale, and it must be given before they receive any money under the decree, whether it be therein directed or not.

7. Where, since the appeal, the appellant finds proof that one of the judgments had been paid, that cannot affect the propriety of the affirmance of the decree by the appellate court, but appellant can have relief in the court below.

Appeal from decree of circuit court of Botetourt county, rendered 2d November, 1878, in the chancery suit of John Bodkin, Wm. T. Hardy, and Thomas J. Obenshain, on behalf of themselves and all other judgment creditors of John W. McAllister, against said McAllister, to enforce certain judgments obtained in 1857, which, they alleged, were liens on 200 acres of land in said county, which McAllister claimed as his homestead under the laws of this State, when in 1873 he was adjudged a bankrupt under the laws of the United States, and which was allotted him 24th September, 1873, by the bankrupt court at Lynchburg for his homestead, when he was discharged as a bankrupt.

This suit was instituted in 1878. Thomas L. Michie was the assignee in bankruptcy of McAllister, and was not made a party to the suit. Executions were issued on the judgments, and returns thereof made. McAllister demurred, answered, and pleaded that the enforcement of the judgments was barred by the lapse of twenty years.

The circuit court decreed the sale of the land, and McAllister appealed.

The other facts and proceedings are stated by the court in its opinion.

*G. W. & L. C. Hansbrough* and *Mays & Mays,* for the appellant.

1. The assignee in bankruptcy should have been, but was not made a party to this suit. He held the legal title to the land which is the subject of the suit, the same having been conveyed to him by the register upon appellant's adjudication in bankruptcy. See *Barger* v. *Buckland,* 28 Gratt. 871; *Tichenor* v. *Allen,* 13 Gratt. 15.

2. As the fee was conveyed to the assignee there remained in him, after the *qualified* and *limited* estate of homestead was carved out of the fee and allotted to appellant, the reversion. He is a party in interest.

3. The decree of the bankrupt court allotting the land to appellant as his homestead should perfectly protect it from the claims of the appellees. That court had jurisdiction of the matter of his bankruptcy and of all things pertaining thereto. The allotment of his homestead exemption is one of the things pertaining to that matter; and it is a settled canon of the courts that the decrees of all courts having jurisdiction over the subject matter thereof cannot be *collaterally* assailed and annulled, as is here attempted.

*Edmund Pendleton,* for the appellees.

ANDERSON, J., delivered the opinion of the court.

It is assigned as error that Thomas L. Michie, the assignee in bankruptcy, in whom it is alleged that the legal title to the land in question vests, is not a party. Is the legal title in the assignee?

The land which is subject to the lien of the judgments, which this suit was brought to enforce, and which the

defendant McAllister surrendered in bankruptcy, but claimed as his homestead, was assigned to him by the bankrupt court for his homestead. The act of Congress (Rev. Stat. of the United States, p. 980, § 5044) provides that as soon as an assignee is appointed and qualified, the judge, or register, where there is no opposing interest, "shall assign and convey to the assignee all the estate, real and personal, of the bankrupt, * * * and such assignment shall relate back to the commencement of the proceedings in bankruptcy," and shall, by operation of law, vest the title thereto in the assignee. But the next following section declares "there shall be excepted from the operation of the conveyance" certain property therein mentioned, "and such other property not included in the foregoing exceptions as is exempted from levy and sale upon execution, or other process, or order of any court, by the laws of the State in which the bankrupt has his domicil at the time of the commencement of the proceedings in bankruptcy, to an amount allowed by the constitution and laws of each State, as existing in the year 1871." And it is further declared that "these exceptions shall operate as a limitation upon the conveyance of the property of the bankrupt to his assignee; and in no case shall the property hereby excepted pass to the assignee, or the title of the bankrupt thereto be impaired or affected by any of the provisions of this title," &c.

Thus we see it is expressly provided by the bankrupt law itself that the homestead shall in no case pass to the assignee in bankruptcy, and that it shall operate as a limitation upon the conveyance of the property of the bankrupt to his assignee. And it appearing that George W. McAllister, the appellant, was adjudged a bankrupt by the district court of the United States, for the western district of Virginia, and that he claimed a homestead of the two hundred acres of land which the plaintiffs below seek

to subject to their judgment liens, and that the same was decreed to him in the said proceedings in bankruptcy, it follows that the said assignee never had title to the said two hundred acres of land, and has no interest in the subject of this suit. It appears, from what has been said, that the legal title was never vested in the assignee. This is plain where the homestead has been allotted to the householder before he went into bankruptcy. And I think it is is equally plain, under the act of Congress before cited, where the assignment of the homestead is made in the bankruptcy proceedings. But it is not necessary to decide that point in this case: for if it be held, under that act, that the title vests in the assignee, until the homestead be allotted to the bankrupt, on that being done, it immediately reverts to the bankrupt. So that upon either construction the legal title to the homestead, by the act of bankruptcy, is not vested in the assignee. It follows, therefore, that the assignee in bankruptcy had no interest in the subject of this suit, and was an unnecessary party, unless, as was contended by appellant's counsel, he had a reversionary interest.

He has no such reversionary interest. It is provided by the law of this State, by virtue of which the householder is entitled to a homestead, that after his death, his homestead in land, not having been aliened in his lifetime, shall continue, for the benefit of his widow and children, until her death or marriage, and after her death or marriage, for the exclusive benefit of his minor children, until the youngest child becomes twenty-one years of age; after which it shall pass, according to the law of descents, to the heirs of the said householder, or, according to his will, to his devisee, not subject to dower, but subject to all the debts of said householder. Code of 1873, p. 1171, ch. 183, § 8. The householder is even empowered to devise the land, which will go to the devisee, and if he makes no de-

vise, it will descend to his heirs at law, upon the happening of the events just mentioned ; but in no event will the title pass to his assignee in bankruptcy.

We are of opinion, therefore, that the assignee was not a necessary party to this suit; and this conclusion, we think, is in accordance with the decisions, both State and Federal.

Again, it is contended that the jurisdiction assumed by the State court is an invasion of the jurisdiction of the Federal court, and that its decree makes null and void the rulings and decrees of the United States district court.

The plaintiffs' judgments were rendered and docketed, and liens acquired, long before McAllister filed his petition in bankruptcy, and before the homestead right existed, and the land which was allotted to him as a homestead is the only property he had out of which the plaintiffs' judgments could be satisfied. The plaintiffs were not parties to the proceedings in bankruptcy. The answer of McAllister virtually admits that they were not summoned or notified so as to become parties, and assigns a reason why they were not. He says they did not come in and prove their debts. No question was adjudicated or raised in the suit in bankruptcy as to the existence of the judgment liens upon the land which was allotted to the bankrupt for his homestead, and could not have been, as they were not before the court. It was a matter of which the district court did not take cognizance, and upon which it passed no judgment, and could not, because the parties were not before it. In such cases it has been repeatedly held by this court, and by the supreme court of the United States, that it was competent for judgment-lien creditors to seek the enforcement of their liens in a State court. *Spilman* v. *Johnson,* 27 Gratt. 38 ; *Ray* v. *Norseworthy,* 23 Wall. 134. The decree of the State court, which is the subject of this appeal, does not annul, controvert, or impinge any of the proceedings or decrees of the district court in the bankruptcy case.

It was also assigned as error in the decree of sale, that the rental value was sufficient to satisfy the judgment in five years; that the weight of the evidence shows that the annual rental value was $250, when the master put it at only $212.50. This is answered by the appellees' counsel by a statement which shows that, putting the rental at $250 a year, it would not discharge the judgments in five years.

The error assigned, that the judgments were rendered more than twenty years before the bill was filed, and that no execution was issued upon them, is not well assigned, as the record shows that an execution was issued upon each judgment. And deducting the time between the 17th of April, 1861, and the 1st of January, 1869, when the running of the statute was suspended, there cannot be computed twenty years between the date of the judgments and the filing of the bill in this cause.

With regard to the error assigned, that priority is not given to McCartny's claim, he makes no objection to the decree on that ground. When a sale is made and reported, the court below, if it confirms the sale, when it makes distribution of the proceeds of the sale, may determine any question as to right of priority, should it arise.

With regard to the objection that the decree does not require the commissioner of sale to give bond and security, the statute requires that he *shall,* before he collects any money. See *Hess et al.* v. *Rader and Wife et als.,* 26 Gratt. 746. The decree does not authorize the commissioner to receive the proceeds of the sale, except the costs of suit and expenses of the sale. And when he is authorized by the court to collect the purchase money, it will be proper to provide in the decree that he shall give bond and security before he proceeds to collect or receive any money under the decree.

It is represented by the counsel of the appellant, that

since the decree appealed from was pronounced, and the appeal allowed, the appellant has discovered a receipt, showing that he has fully satisfied William T. Hardy's judgment. That is a matter which cannot be considered on this appeal. But if the fact be so, the appellant's remedy will be in the court below, from which he will not be debarred by a decree of this court, upon the pending appeal. But the appellee's counsel pledges his client here, that the appellant shall be relieved from the decree in favor of William T. Hardy, if the fact be as represented by the appellant.

Upon the whole the court is of opinion that there is no error in the decree of the circuit court, for which it should be reversed, and that the same be affirmed.

DECREE AFFIRMED.