# Richmond.

## BOISSEAU v. BOISSEAU, GUARDIAN, &C.

### May 1, 1884.

1. GUARDIANS—*Conversion of ward's estate.*—Guardians have no right to convert the personalty of their wards into realty without the previous sanction of a court of chancery.

2. IDEM—*Particeps criminis.*—Vendor to guardian receiving payment out of ward's funds without previous sanction of court, is held to be a participant in the guardian's offence, and equally liable with him.

3. IDEM—*Idem—Case at bar.*—B. sold to guardian house and lot in D. for $1,500, and received in part payment $750 of the ward's estate, and for balance executed, as such guardian, his three bonds each for $250, payable with 8 per cent. per annum interest from date, in one, two and three years, all without previous sanction of court.

HELD:

 1. The transaction was unauthorized and invalid.

 2. B. should be required to refund the cash paid, with interest; and in default thereof, the property should be sold for the ward's benefit.

Appeal from decree of corporation court of Danville, entered 4th August, 1882, in the cause of P. H. Boisseau against Wm. E. Boisseau, guardian of four infant children of G. W. Davis, deceased. The object of the suit was to enforce the vendor's lien for $750, with interest from June 1st, 1877, till paid, at the rate of eight per centum per annum, being the unpaid balance of the purchase money for a house and lot in Danville that was sold and conveyed by plaintiff to said guardian, who had paid cash thereon $750 of the wards' funds. The infant defendants, by their mother and next friend, answered and set up that the investment was without authority and a breach of trust in their

guardian, and that the plaintiff was a participant therein, and liable to refund their money. At the hearing, the court decided in favor of the infant defendants, and decreed the repayment of the money with its interest, and in default of such repayment a sale of the house and lot and the application of the proceeds thereto. From this decree P. H. Boisseau appealed to this court.

*Green & Miller*, for the appellant.

*Withers & Barksdale*, for the appellees.

HINTON, J., delivered the opinion of the court:

It appears by the record of this case that William E. Boisseau qualified in the year 1876, as guardian of the infant children of George W. Davis, deceased, and, as such guardian, received the sum of $800 from the proceeds of their father's life insurance; and that this sum constituted the whole estate of these infants at that time. That on the 1st of June, 1877, the said guardian purchased of one P. H. Boisseau a certain house and lot in the town of Danville, Va., at the price of $1,500; that this purchase was made by the guardian at the instance of the mother of the infant children, who were his wards, upon the understanding that the mother would rent out the property and pay the deferred instalments from the rent, but that instead of doing so, the mother and the children have occupied the same continuously from the time of the purchase; that the guardian, the said William E. Boisseau, paid the cash payment of $750 on the said property, out of the $800 of life insurance money mentioned above; that for the residue, he gave his three bonds for $250 each, carrying interest at the rate of eight per centum per annum, maturing at one, two and three years, respectively, after date, and that these bonds were secured by a vendor's lien, expressly reserved, on the face of the deed. And that the said William E. Boisseau is styled in both deed and bonds as guardian of William Henry

Davis, George James Thomas Davis, Carry Eugene Davis and Mary Mabel Davis, infant children of George W. Davis, deceased. None of the deferred instalments had been paid up to February, 1882, when the appellant filed his bill in the corporation court of Danville, praying a sale of said house and lot to satisfy his vendor's lien and for general relief.

On the 4th day of August, 1882, the decree appealed from was rendered, in which the court held, that the purchase of the aforesaid house and lot by William E. Boisseau, guardian, was a breach of his trust as guardian, and that the vendor, P. H. Boisseau, was equally responsible therefor, and adjudged the purchase to be null and void, and decreed that the said P. H. Boisseau should, within sixty days, return to the infant defendants, or their guardian, the said $750, with interest from the 1st July, 1877, or, in default thereof, the property should be sold.

Mr. Schouler in his work on Domestic Relations, at page 466, says "conversions, that is to say changes made in the character of trust property from personal into real, or real into personal, are never favored. The previous sanction of chancery should always be sought, and this is only given under strong circumstances of propriety. The same may be said of exchanges of the ward's property.      *      *      *      *      *
The guardian must not buy land with the infant's money without the direction of chancery."

In 2 Kent's Commentaries, at marginal page 230, that distinguished author says "the guardian must not convert the personal estate of the infant into real, or buy land with the infant's money without the direction of the court of chancery The power resides in that court to change the property of infants from real into personal, and from personal into real, whenever it appears to be manifestly for the infant's benefit."

And Perry in his book states the condition of the law in England and the United States as follows :

"In England trustees or guardians are not ordinarily permit-

ted to change the nature of the infant's property by converting personalty into realty, or, *vice versa,* as where the trustees of an infant had saved £3,000 out of the profits of real estate, and laid it out in lands adjoining the infant's estate, with the consent of the guardian, and the infant died under age, the trustees were held not justified in making such an investment, and were ordered to account to the infant's executors. The rule originated in the fact, that formerly an infant at seventeen might make a will of personalty, and to convert his personalty into real estate took away a power that the law gave him; on the other hand, to convert his real estate into personalty gave him a power contrary to the policy of the law. The reason ceased with the statute of wills, which takes away the rights of infants to make wills, either of real or personal estate, before they are twenty-one. Lord Eldon seemed to think that the rule was established for the protection of the relative interests of the real and personal representatives of the infant, but it is now established that the court will not regard the interests of an infant's representatives, nor interfere to protect them, but will look to the best interest of the infant. There seems now to be no principle at the bottom of the rule, and therefore it has been said, in some cases, that where the advantage or convenience of the infants called for a change in the nature of the property the court would order it. In other and later cases the jurisdiction and power of the court to change the nature of an infant's property have been denied; and it seems now to be the established rule that such change cannot be made even for the advantage of the infant.

"In the United States a guardian or trustee cannot convert an infant's personalty into real estate. If such conversion is made, the wards, on coming of age, may elect to receive their personal property, and the trustee or guardian must account and pay over to them.          *          *          *          *          *          *

"And a trustee or guardian should not venture to expend the ward's personalty in making permanent improvements on the

ward's land without first obtaining the sanction of the court; for if an unauthorized act is first done, the court will not sanction it, though in the particular case it might be proper, if first sanctioned by the court; for the principle is, that trustees and guardians should take no important step without leave of the court, and the court will punish such action taken on their own responsibility, by refusing to sanction the expenditures." 2 Perry on Trusts (3d Ed.), sections 605, 606.

Now, the undoubted rule being, as may be seen from the above citations, that guardians have no right to convert the personalty of their wards into realty without the sanction of a court of chancery first obtained, it follows that the guardian, Wm. E. Boisseau was guilty of a palpable breach of trust in making the purchase of the house and lot in question with the money of his wards, and in undertaking to secure the payment of the balance of the purchase money, with interest, at the rate of eight per centum thereon, with the said house and lot. And it being also perfectly plain from the record, that the vendor, P. H. Boisseau, knew that he was dealing with Wm. E. Boisseau, as guardian, and that it was the money of the infants, that he was receiving from the guardian, he must be held equally liable with the guardian for the said breach of trust. For it has been long settled that whenever a fiduciary does any act in violation of his duty or commits a breach of trust, that he and all who wilfully and knowingly aid him in the execution of these purposes, are, in the eyes of the law, participators in the offence, and all stand upon the same footing. *Fisher* v. *Bassett,* 9 Leigh, 119; *Jackson* v. *Updegraffe,* 1 Rob. 107; *Pinckard* v. *Woods,* 8 Gratt. 140; *Jones* v. *Clarke,* 25 Gratt. 658; *Asberry* v. *Asberry,* 33 Gratt. 463.

Ordinarily, where a fiduciary is acting seemingly in the discharge of his duties and there are no circumstances to indicate that the trustee or guardian, as the case may be, is exceeding his authority or violating his trust, third persons may deal with him, without inquiring whether or not the exigencies of the

trust require him to dispose of the trust subject; but such is not the case when the fiduciary does not dispose of the trust subject in pursuance of the trust, but in violation of it, and the person with whom he deals knowing this fact, aids him in the execution of his purpose, as in this case, by contracting with him.

The transaction in this case spoke for itself, and showed the vendor as plainly as it was possible for anything to do, that it was illegal, and that the guardian was not acting in pursuance of his trust, but in violation of it. In *Broadus* v. *Rosson*, 3 Leigh, 25, Tucker, P., speaking for the court, said: "Where he (the vendor) is aware that he is receiving payment out of a fund which the law will not permit to be encroached upon without an order of the court, I think he stands on no more advantageous ground than the guardian himself." And in *Asberry* v. *Asberry*, 33 Gratt. 470, this court held, that as Evans knew that the guardian was using the ward's money in paying his own debt, therefore he knew, or must be held to know, that the guardian was thereby misapplying the funds and committing a breach of trust. In that case, the learned judge who delivered the opinion of the court, said: "The learned counsel says that Evans acted in entire good faith, without a suspicion of anything improper in the transaction. It may be so. It is wholly immaterial. The law stamps the transaction as fraudulent, however innocent the intention of the parties, not actual fraud in this case, but fraud in law arising from a misapplication of trust funds. And this is what is meant by the learned judge of the circuit court in saying it was a collusive transaction." Viewing the facts of this case in the light of these principles, I cannot but regard this case as one in which both the guardian and the vendor must be held to have participated in an improper application of the funds belonging to these infants.

As to the objection that the decree does not require the commissioner of sale to give bond and security, before he collects the money, it is sufficient to say that when he is authorized to

collect the purchase money, it will be proper to provide in the decree that he shall give such before he receives any money under the decree. *Hess* v. *Rader*, 26 Gratt. 746; *McAllister* v. *Bodkin at als.*, 76 Va. 814.

For these reasons I am of opinion to affirm the decree of the said corporation court of the town of Danville.

DECREE AFFIRMED.