1. CONVERSION OF PERSONALTY—DISTRIBUTION OF ESTATES.
When personal property of an infant is invested by his guardian in real estate, either by authority of a court or upon the guardian's own responsibility, the character of such property is not changed, but it is regarded as being still personal estate, for the purpose of distribution on the infant's death, and otherwise.

2. GUARDIAN—POWERS—PURCHASE OF REALTY—ELECTION BY WARD.
The general guardian of an infant has no inherent right to use the personal property of his ward in the purchase of real estate, and, if he does so, the ward or his representatives have a right to e'ect, upon the guardian's accounting, whether to take the land, or to demand the money represented by it.

3. SAME—INVESTMENTS—POWERS OF SURROGATE'S COURT.
The surrogates' courts have no power to authorize the general guardian of an infant to invest his ward's money in real estate, and an order of a surrogate's court purporting to give such authority does not deprive the ward of his election to take either the land or the money.

In the matter of the settlement of the accounts of Joseph Bolton, as general guardian of Grace A. Small. Decree settling account.

H. C. Hearman and C. F. Doyle, for petitioner.
M. D. Nolan, for Anthony T. Small.
Samuel Foster, special guardian of infant W. B. Dougdale.

COMSTOCK, S. The underlying question presented on this accounting is whether the guardian's account shall be surcharged with the sum of $5,200 expended by him in the purchase of a lot and residence for his ward, or shall the latter be treated as representing the purchase money, and a conveyance thereof decreed.

The facts are as follows: At the time of the said purchase the ward was nearly 20 years of age, possessed of an estate in money amounting to over $30,000. She was married, and kept house with her husband on the premises in question. Having there established a pretty and attractive home, she became very anxious to purchase the same, and urgently importuned her guardian so to do. To that end both joined in a petition to the surrogate's court for leave to make such purchase, which resulted in an order, made on the 23d day of December, 1895, granting their petition, and permitting the use of a sum, not exceeding the sum first above mentioned, therefor. Thereupon the guardian made the purchase, paying the full amount allowed by said order, and took the title in his name as such general guardian. The ward continued in the occupation of the premises until the 2d day of October, 1896, on which day she died, being then 20 years and 7 months of age. There is no claim that the premises were not fully worth the price paid, or that they were not suitable to her position and circumstances. On the 13th day of July, 1896, she made a will, which has been probated, whereby she bequeathed all of her property and estate to her husband, Anthony T. Small, and appointed him sole executor. She left neither parent nor child surviving her, and her only heir at law is her brother, William B. Dougdale, who is

an infant, of whom this accounting party is also the general guardian, who has raised the questions involved herein, in the interest of this ward as heir at law.

The guardian claims that he had an inherent right to buy this land, and that, whether this be so or not, the surrogate's court had jurisdiction to allow it to be done; and that, such being the case, he is not only entitled to credit therefor on this accounting, but that the property so purchased is to be deemed real estate, and passes to the heir at law, and not, under the ward's will, to her husband. This last proposition cannot be sustained, either upon principle or authority, even though the order directing the purchase had been made by a court of equity. The court of chancery, in the exercise of its broad powers over the property of infants, as wards of the court, frequently directed such purchases, but not without carefully guarding the descendible or inheritable character of the original property. An individual of full age, otherwise competent, can change his property and do with it as he sees fit; but a trustee, be it either the court itself, or one appointed by it, cannot change the legal character of property, and thereby alter its course and direction, under the statutes. Courts may change its form, but the original character follows it, and is not lost, through whatever mutations it may go. 2 Kent, Comm. (12th Ed.) 230; Ware v. Polhill, 11 Ves. 278; Ex parte Phillips, 19 Ves. 118; Story, Eq. Jur. (12th Ed.) § 1357; Horton v. McCoy, 47 N. Y. 21, 26; Forman v. March, 11 N. Y. 544; Haberman v. Baker, 128 N. Y. 253, 261, 28 N. E. 370; Lockman v. Reilly, 95 N. Y. 64.

Chancellor Kent says:

"So Lord Eldon in Ware v. Polhill and in Ex parte Phillips was very guarded in laying down the power of the court in changing infant's property so as not to affect the infant's power over it when he comes of age, or to change its descendible character."

Again:

"It is the constant rule of courts of equity to hold lands purchased by the guardian with the infant's personal estate, or with the rents and profits of real estate, to be preserved, and distributable as such."

In Forman v. Marsh, 11 N. Y. 544, the court says:

"The right of the guardian to change the nature of the estate of his ward was acknowledged by the court of chancery at an early period, but it was restricted by two qualifications: First, that the change should be for the manifest advantage of the infant; and, second, that the right of succession to the property, in case of the death of the infant, should not be changed, * * * founded upon the common-law right of an infant to dispose of his personal estate by will at an earlier age than twenty-one years."

Chief Justice Church, in the opinion of the court in Horton v. McCoy, 47 N. Y. 21, 26, says:

"Infants are not regarded capable of managing their property, or of determining whether a change from one kind of property to another is for their interest. The general rule, both in England and in this country, has been, in dealing with the property of infants, to impress it during minority with the original character, whatever change may have actually occurred. Whether this rule is based upon the old idea of the inviolability of legal titles, or to prevent the injustice to heirs and next of kin of changing the power of disposition,

or to protect the property from conversion by improper influences on the part of either class, it is not important to inquire."

### In Lockman v. Reilly, 95 N. Y. 64, Judge Rapallo says:

"That land bought in by executors on a foreclosure of a mortgage belonging to the estate is to be treated as personal property, which the executors may sell, and for which they are accountable as such, has been frequently decided, and it is immaterial whether the deed is taken in the name of the executor as such or in their individual names. * * * Land thus purchased * * * is regarded as a substitute for the mortgage foreclosed, and takes its place for all purposes as between the executor or administrator and the parties interested in the estate. It is not treated as land belonging to the testator. His heirs or devisees take no direct interest in it, and cannot dispute the title of a purchaser from the executor."

It seems, therefore, to be well settled that the land purchased by this guardian stands in representation of the money, impressed with like character, and consequently passed to her husband under her will, provided he has a right of election, and accepts the same. This brings us to the question of his right of election, for, if the guardian had an inherent right to make this purchase, or if the surrogate's court had the power to make the order directing it, then, in the first case, the guardian, and, in the second, the court, would be deemed to have made this election for and on behalf of the infant; and, this being so, the guardian would be entitled to turn over the land as an established asset in the place of the money.

My attention has not been called to any authority in this state, nor have I been able to find any, holding that a guardian possesses such right. It seems to be contrary to the general understanding as to the powers of such officers, except in cases where the purchase becomes necessary in the protection of some interest in the property, by lien or otherwise; but such is not this case. Chancellor Kent says:

"The guardian must not convert the personal estate of the infant into real, or buy land with the infant's money, without the direction of the court of chancery." 2 Kent, Comm. (12th Ed.) 234.

### And again:

"It is said that the power may be exercised by the guardian or trustee in a clear and strong case, without the previous order of a court of equity; but the infant, when he arrives at full age, will be entitled to his election to take the land or the money with interest; and, if he elects the latter, chancery will take care that justice is done by considering the ward as trustee for the guardian of the lands standing in his name, and will direct the ward to convey." 2 Kent, Comm. (12th Ed.) p. 230.

"Guardians will not ordinarily be permitted to change the personal property of the infant into real property, * * * since it may not only affect the rights of the infant himself, but also of his representatives if he should die under age. But guardians may, under ordinary circumstances, where it is manifestly for the benefit of the infant, change the nature of the estate. The court will support their conduct if the act be such as the court itself would have done under the like circumstances by its own order." 2 Story, Eq. Jur. § 1357.

### Tyler, in his work on Infancy and Coverture (page 260, § 175), says:

"The general rule is that the guardian cannot purchase real estate with his ward's funds, without an order of the court."

In Eckford's Ex'rs v. De Kay, 8 Paige, 89, 95, the chancellor said:

"But, as the guardian has vested the fund, in which this infant daughter had an interest, in the purchase of this real estate without the previous sanction of the court, she would, of course, have the right, when she became of age, if this court in the meantime had not made the election for her, to repudiate the deed, and to claim the share of the $27,000 and interest from the estates of her guardians or from their sureties."

In White v. Parker, 8 Barb. 48, 53, it was held that the guardian could not buy real estate with the ward's funds. In Rickards' Case, 15 Abb. Prac. (N. S.) 6, held that he could not purchase a dower right. In Hassard v. Rowe, 11 Barb. 22, held that where he had used his own money in making improvements on his ward's land, he could not recover it; citing Eckford v. De Kay, 6 Paige, 565, and Putnam v. Ritchie, Id. 395, 401. If, however, the moneys used had been those of the ward, and used in good faith, the expenditure could have been allowed, in the discretion of the court, as a court of equity having general charge and care over estates of infants. It seems, therefore, that the guardian had no absolute inherent power or right to make this purchase. The next question to be considered is, had the surrogate's court the power to direct or permit it? and, as I have before said, I regard this question important only as bearing on the right of the executor of the ward to repudiate the purchase and demand the money. If such election was legally made for the infant by a court of competent jurisdiction, during her infancy, it is final. The jurisdiction of the surrogate's court being special and limited, and such only as is either expressly or by necessary implication conferred by statute, resort must be had thereto, to find this power, if any exists. It possesses no broad equity power. Stilwell v. Carpenter, 59 N. Y. 425; Riggs v. Cragg, 89 N. Y. 479; Stilwell v. Carpenter, 62 N. Y. 639; In re Underhill, 117 N. Y. 471, 22 N. E. 1120; In re Wagner's Estate, 119 N. Y. 28, 23 N. E. 200; Sanders v. Soutter, 126 N. Y. 193, 27 N. E. 263; In re Randall, 152 N. Y. 508, 46 N. E. 945.

Section 2472 of the Code of Civil Procedure enumerates the cases in which jurisdiction exists, "in addition to the powers conferred upon it * * * by special provision of law," and declares that "this jurisdiction must be exercised in the cases and in the manner prescribed by statute." Subdivision 7 provides the power "to appoint and remove guardians for infants to compel the payment and delivery by them of money or other property belonging to their wards, and in the cases specially prescribed by law to direct and control their conduct, and settle their accounts." It will be observed that the authority over executors and administrators conferred by the third subdivision of this section "to direct and control their conduct," is not limited "to cases specially prescribed by law," as in the case of infants; the significance of which should not be overlooked. Section 2821 provides that surrogates' courts have "the like power and authority to appoint a general guardian of the person or of the property, or both, of an infant, which the chancellor had on the 31st day of December, 1846." The legislature and codifiers deemed it necessary to expressly confer on the surrogate's court the power to direct the application of the principal, or any part thereof, to the infant's education and

support, and also to determine how much income should be so used by the guardian. Certainly, if this court has the broad and important power and authority over the property of infants to enable it to direct an unalterable change of the infant's property, whereby he, on attaining his majority, would have no choice, this special grant of power, in a matter of far less importance, is strangely out of place. But section 2744, made applicable by section 2850, gives this election to the one succeeding to the estate. I cite this section as a part of the system, applicable to this court, and as showing, in connection with the other provisions of the Code relative to accountings, that the codifiers did not contemplate any such permanent investment of the infant's money as made in this case, either by the guardian or this court itself. In the broadest sense, the old court of chancery possessed and exercised jurisdiction over the person and property of infants. They were its wards; and in the exercise of its equity power, as we have seen, it could, and often did, direct such use of the infant's funds, or sanction it after it was done, provided the infant had not attained his majority. This power was transferred to the supreme court, and is now held by it, even over guardians appointed by the surrogate's court. Dayt. Sur. (5th Ed.) 819, and cases cited. I am unable to find any authority for the contention that this court has any such power, but, on the contrary, there is much against it. It is neither expressly conferred nor is it incidentally or impliedly given.

When it is considered with what jealous care and vigilance the courts have always guarded the property rights of infants, and the limitations and restrictions in respect thereto placed upon courts of the largest jurisdiction, it would be a most extreme and inharmonious provision of statute which would confer on this court, with its generally limited and narrow powers, and its lack of equity jurisdiction, the discretionary right to direct a change of the infant's property, by which he would be bound on becoming of full age. I therefore conclude that Anthony T. Small, as the sole legatee and only person interested under the will of this infant, has the right of election whether he will require the funds thus appropriated by the guardian to be made good, or whether he will accept the land and premises in lieu thereof; and, he having made such election in writing, on file, in favor of the latter proposition, and there being no creditors of the late infant, a decree may be prepared settling the account on this basis, and directing the guardian to convey said property to him, the same being regarded personal. In re Gilbert, 39 Hun, 61; In re Brenneman (Sup.) 33 N. Y. Supp. 302; Lockman v. Reilly, 95 N. Y. 64; Bayer v. Phillips, 17 Abb. N. C. 429; Wood v. Mather, 38 Barb. 473, affirmed 44 N. Y. 256.

Decreed accordingly.