In the Matter of the Judicial Settlement of the Accounts of
    JOSIAH BOLTON, SR., Deceased, as General Guardian of the
    Person and Estate of GRACE A. SMALL, Deceased, and of
    JOSEPH BOLTON, JR., and Others, as Executors, etc., of
    JOSEPH BOLTON, SR., Deceased.

JOSEPH BOLTON, JR., and Others, as Executors, etc., Appellants;
    ANTHONY T. SMALL, Individually and as Executor of GRACE
    A. SMALL, Deceased, Respondent.

1. SURROGATES — LIMITED POWER AS TO INFANTS.  The Surrogate's
Court has only such authority over infants and their property, and over
the conduct of their guardians, as is specially conferred upon it by statute.

2. ABSENCE OF POWER TO CONVERT INFANT'S PERSONALTY INTO REALTY.
The Surrogate's Court has no authority to direct a conversion of an infant's
property from personalty into realty, by which the infant will be bound
on attaining majority, or by which the devolution or disposition of the
property will be bound in case of the infant's death under age.

3. INFANT'S PERSONALTY NOT CONVERTED INTO REALTY BY INVEST-
MENT IN DWELLING HOUSE.  The investment of a small part of the per-
sonal property of a minor, married and keeping house with her husband,
in the purchase of a suitable dwelling house to be used as a residence for
herself and family, made by her general guardian at her request and
pursuant to an order of the surrogate, does not change the money so
invested from personal property into real estate, with reference to the
statutes of descents and distributions.

*Matter of Bolton*, 37 App. Div. 625, affirmed.

(Argued April 18, 1899; decided May 2, 1899.)

APPEAL from so much of an order of the Appellate Divis-
ion of the Supreme Court in the third judicial department,
made January 11, 1899, as affirms certain portions of a final
decree of the Surrogate's Court of Rensselaer county judicially
settling the accounts of the executors of Joseph Bolton as to his
guardianship of Grace A. Small, a deceased minor.

On the 5th of December, 1895, Joseph Bolton was
appointed general guardian of Grace A. Small, a minor, by
the Surrogate's Court of Rensselaer county.  On the 23d of

December, 1895, the general guardian presented a petition to the surrogate showing that said Grace A. Small was then nineteen years of age, residing in Rensselaer county, with her husband, Anthony T. Small; that her estate consisted of about $4,000 in real estate and $36,000 in personal property in the form of money and securities; that her real estate was not desirable as a residence, and that she and her husband had established a pleasant home in a house on Third avenue in the village of Lansingburgh, to which she was much attached; that she wished her guardian to purchase said premises to be used as a home for herself and family by expending not more than $5,200, the fair value thereof. The general guardian stated that in his opinion it would be an advantage to his ward to own her own residence and to be relieved from the necessity of paying rent. Mrs. Small united with her guardian in this petition, and asked the court to direct him to make such purchase, and on the 23d of December, 1895, the surrogate made an order granting the prayer of the petition, without directing that the investment should retain its character as personal property. Subsequently the purchase was made for the sum named, and title was taken in the name of the general guardian as such. The premises were worth the price paid and were suited to the position and circumstances of the infant.

On the 2d of October, 1896, and before she had attained her majority, Mrs. Small died, leaving her surviving her husband, one brother, but neither ancestor nor descendant. She also left a last will and testament, executed in July, 1896, when she was more than twenty years of age, by which she bequeathed her household furniture, personal effects and two-thirds of all the residue of her personal property to her husband absolutely, and the remaining third to him in trust for the benefit of any child or children who might be born to her, with remainder to himself if her issue should die during minority. Mr. Small was also appointed executor, and after her death duly qualified.

The general guardian died in June, 1897, and the appel-

lants, who are his executors, filed their account, asking that they be credited with the sum of $5,200, the amount paid for said real estate, and the further sum of $300 expended for repairs thereon. Mr. Small, the respondent, as executor of Mrs. Small, objected upon the ground that the executors should account to him for all the personal estate of the minor without deducting anything for the purchase of the real estate, which he claimed was unauthorized. He insisted that said house and lot was a part of the personal estate of the minor, and he consented to take it in lieu of the sums expended in making the purchase and repairs. The surrogate sustained the objection and made a decree accordingly, which, upon appeal, was affirmed by the Appellate Division.

*Samuel Foster* for appellants. Such an order as was granted by the surrogate in December, 1895, authorizing the purchase of this real estate from the personal property of the infant, Grace A. Small, would be valid and authorized at common law ; also in chancery and by the chancellor and now by Surrogate's Court, and would work a conversion of the personalty into realty and pass to her heir at law, her brother, William B. Dugdale. (*Inwood* v. *Twyne*, 2 Eden, 148 ; *Winchelsea* v. *Norcliff*, 1 Vern. 434 ; *Oxenden* v. *Lompton*, 2 Ves. 69 ; *Pierson* v. *Shore*, 1 Atk. 480 ; *Betts* v. *Wirt*, 3 Md. Ch. 113 ; *Matter of Salisbury*, 3 Johns. Ch. 347 ; *Witter* v. *Witter*, 3 P. Wms. 99 ; *Flanagan* v. *Flanagan*, 2 Ves. 77 ; 2 Story's Eq. Juris. § 1357 ; *Ex parte Phillips*, 19 Ves. 122 ; *Ashburton* v. *Ashburton*, 6 Ves. 6.) The Surrogate's Court possessed the power to grant this order. (L. 1871, ch. 708 ; Tyler on Infancy [2d ed.], 251 ; *Ex parte Dawson*, 3 Bradf. 30 ; Code Civ. Pro. §§ 2472, 2821 ; *Hyland* v. *Baxter*, 98 N. Y. 615 ; 3 R. S. 220, § 1 ; *Seaman* v. *Duryea*, 11 N. Y. 324 ; *Sipperly* v. *Baucus*, 24 N. Y. 46 ; *Riggs* v. *Cragg*, 89 N. Y. 479 ; *Jumel* v. *Jumel*, 7 Paige, 591 ; *Boughton* v. *Flint*, 74 N. Y. 476 ; Dayton on Surr. Prac. [2d ed.] 622 ; 2 Kent's Comm. 226 ; *Derickson* v. *Derickson*, 4 Dem. 295 ; *Matter of Hosworth*, 2 Redf. 170 ; *Matter of Brick*, 15 Abb. Pr. 21.)

*Michael D. Nolan* for respondent. The purchase of one-half of lots 115–116 by the general guardian of Grace A. Small, as such general guardian, for $5,200 of her personal assets, did not change the character of the said personal property into real estate, so that, upon her death at twenty years of age, said real estate descended to her heirs. These executors are bound to account for said $5,200, as personalty, to the executor of the deceased minor. The same rule applies to money expended in repairs, etc., on said property. (*Ex parte Phillips,* 19 Ves. 122; *Ware* v. *Polhill,* 11 Ves. 257, 278; *Forman* v. *Marsh,* 11 N. Y. 544; *Horton* v. *McCoy,* 47 N. Y. 21; *White* v. *Howard,* 46 N. Y. 166, 167; 2 Story's Eq. Juris. § 1357, note 4; *Eckford* v. *De Kay,* 8 Paige, 89; *Cromwell* v. *Kirk,* 1 Dem. 599; Willard's Equity [Potter's ed.], 624; Bispham's Equity, § 549; *Ford* v. *Livingston,* 54 N. Y. S. R. 164; *Foreman* v. *Foreman,* 7 Barb. 215.) The order made by the Surrogate's Court, giving leave to the general guardian to purchase the said real estate, was void and of no effect. The court had no jurisdiction to make such an order. Its powers are purely statutory, and no statute prescribes such a power. (Code Civ. Pro. §§ 2472, 2821–2860; *Matter of Underhill,* 117 N. Y. 471; *Matter of Camp,* 126 N. Y. 377; *Riggs* v. *Cragg,* 89 N. Y. 479; *Matter of Hawley,* 104 N. Y. 250; *Matter of Randall,* 152 N. Y. 508.) Our reason for charging these executors with the proceeds of the sale of this real estate is the proper one, viz., that the proceeds are personal estate and go to this executor and not to the heir. A discretionary power of sale of land, when executed, converts the land into personalty when such sale is made within the limitations of the power and in strict pursuance thereof. (*Atwell* v. *Atwell,* 41 L. J. Ch. 23; *Walter* v. *Maunde,* 19 Ves. 424; *Polley* v. *Seymour,* 2 Y. & Col. 708; 7 Am. & Eng. Ency. of Law [2d ed.], 467; 18 Am. & Eng. Ency. of Law [1st ed.], 944; Chaplin on Express Trusts & Powers, 557; *Erwin* v. *Loper,* 43 N. Y. 521; *White* v. *Howard,* 46 N. Y. 144; *Keller* v. *Ogsbury,* 121 N. Y. 362; *Mellen* v. *Mellen,* 139 N. Y. 210; *Matter of Bolton,* 146 N.

Y. 257; *Matter of Powers*, 124 N. Y. 362; *Van Vechten v. Keator*, 63 N. Y. 55.) A general power to sell does not authorize an exchange or a transfer in payment of a debt. The will must be strictly followed. (*Russell* v. *Russell*, 36 N. Y. 581; 18 Am. & Eng. Ency. of Law, 948.)

VANN, J.   The question presented by this appeal is whether the investment of a small part of the personal property of a minor, married and keeping house with her husband, in the purchase of a suitable dwelling house to be used as a residence for herself and family, made by her general guardian at her request and pursuant to an order of the surrogate, changed the money so invested from personal property into real estate, with reference to the statutes of descents and distributions?

Mrs. Small, although a minor, was more than eighteen years of age, and, hence, had the right to make a valid disposition of her personal property by will. (2 R. S. p. 60, § 21; L. 1867, ch. 782.) If, therefore, the investment made by the guardian was personal property when the minor died, it passed to her husband under the will, so far as covered thereby, and by virtue of his marital right, as to the unbequeathed assets, if any. (*Robins* v. *McClure*, 100 N. Y. 328, 333.) If, on the other hand, it was real property, it passed to her brother as her sole heir at law under the Statute of Descents.

The learned counsel for the appellants has shown great industry in spreading before the court a large number of authorities in this country and in England, which hold that a court of general jurisdiction in equity has power to authorize a change of the property of infants from personalty into realty when it is manifestly for the benefit of the infant. (*Inwood* v. *Twyne*, 2 Eden, 148; *Earl of Winchelsea* v. *Norcliffe*, 1 Vern. 434; *Ware* v. *Polhill*, 11 Vesey, 278; *Matter of Salisbury*, 3 Johns. Ch. 347; *Forman* v. *Marsh*, 11 N. Y. 544; *Horton* v. *McCoy*, 47 N. Y. 21; *Jones* v. *Plummer*, 20 Md. 416; *Grider* v. *M'Clay*, 11 S. & R. 224; *Emerson* v. *Cutler*, 14 Pick. 108; *Rogers* v. *Clark*, 5 Sneed, 665; Story's Eq. Jur. § 1357.) Some of these cases hold that a change so

made, not as an investment but for the convenience of the infant, in the absence of a limitation in the order, converts the personal property into real estate in law as well as fact. The general rule, however, both in England and this country, as stated in *Horton* v. *McCoy* (*supra*), is that the courts having jurisdiction to deal with the property of infants are careful to impress it during minority with its original character, regardless of any change that may, in fact, have been made.

These authorities have no bearing upon the question before us, because the investment under consideration was not made by direction of the Supreme Court, or of any court with general equity powers. The Surrogate's Court has no authority, except that conferred upon it by statute. Originally it was not a constitutional court, but was created by the legislature, and although it was "continued" by the revised Constitution, its jurisdiction and power are not defined by that instrument, and we have to search for them in the statutes of the state. (Const. art. 6, § 15 ; *Koch* v. *Mayor*, 152 N. Y. 72, 78.) We find neither statute nor authority to sustain the contention of the appellants that the surrogate has "as full and complete power, in reference to guardians and infants, as the Court of Chancery formerly had."

It is provided by section 2821 of the Code of Civil Procedure that "the Surrogate's Court has the like power and authority to appoint a general guardian, of the person or of the property, or both, of an infant, which the chancellor had, on the 31st day of December, 1846. * * * Such power and authority," as it is further provided, "must be exercised in like manner as they were exercised by the Court of Chancery, subject to the provisions of this act." A similar provision existed in the Revised Statutes, as amended by chapter 708 of the Laws of 1871, which, even if still in force, as contended by the appellants, confers no greater power than the section already alluded to.

The Code, by section 2846, authorizes the surrogate, upon proper application, to make an order directing the guardian to use such a sum as to the surrogate seems proper out of the

income of the infant's property; or, where that is inadequate, out of the principal, for his support and education. Various other sections give the surrogate power to examine the inventories and accounts of guardians, to compel a proper inventory and account to be filed, to require a judicial settlement of the guardian's account and the like. (§§ 2822–2861.) These special provisions are supervisory in character, and confer no authority upon the surrogate with reference to the investment of the property of infants.

The general jurisdiction of the Surrogate's Court is defined by section 2472, which, so far as applicable to the case in hand, confers authority upon the surrogate or his court "to appoint and remove guardians for infants; to compel the payment and delivery by them of money or other property belonging to their wards, and, in the cases specially prescribed by law, to direct and control their conduct and settle their accounts. This jurisdiction must be exercised in the cases and in the manner prescribed by statute."

While the surrogate has "the like power and authority to appoint a general guardian * * * of an infant, which the chancellor had," it does not follow, as the appellants assume, that surrogates have the general authority over infants and their estates that was formerly exercised by the chancellor. The statute falls far short of making chancellors out of surrogates, so far as general jurisdiction over minors and their property is concerned. It does not give them the power to "direct and control" the conduct of guardians, after appointment, that was possessed by the chancellor, but only "in the cases * * * specially prescribed by law." This limitation is quite significant, in view of its absence when a similar power is conferred upon the surrogate with reference to executors, administrators and testamentary trustees in the third subdivision of section 2472. While the general powers conferred include by implication such incidental powers as are requisite to the complete exercise of the authority expressly granted, still a careful investigation of the general jurisdiction of the surrogate and his special jurisdiction over guardians, as well as

certain incidental powers conferred by section 2481, discloses no power conferred upon that officer with reference to the subject under consideration. The power to direct and control the conduct and settle the accounts of guardians for infants can only be exercised in the cases and in the manner prescribed by statute, and there is no statute which authorizes, directly or indirectly, the investment of infants' money in real estate.

It is unnecessary to consider the general powers of a court of equity, for it has been held that they do not belong to a Surrogate's Court, which can exercise only the limited and peculiar jurisdiction conferred by statute. (*Matter of Randall*, 152 N. Y. 508, 516, and cases cited.) It was even thought necessary by the legislature to expressly confer on the surrogate power to authorize the expenditure of a proper sum for the maintenance and education of the infant, which would have been unnecessary if there is the general power contended for by the appellants. It would be remarkable if the legislature should expressly regulate the comparatively unimportant subject of a small expenditure to maintain the infant and leave the broad subject of the investment of the infant's property wholly to implication, if it was the intention to confer any authority in that regard. The legislature, however, did not leave this open to question, for they expressly limited the power of direction and control to the cases and method prescribed by statute. The theory of authorized investment in real estate is contradicted by the election given by section 2744, which, although primarily applicable to the accounting by executors and administrators, is made applicable to a guardian's accounting also by section 2850.

We think that the Surrogate's Court, with its limited statutory power, and with no general equity jurisdiction, had no authority to direct a conversion of the infant's property from personalty into realty, by which she would have been bound if she had attained her majority, or by which her executor is bound since she died under age. It is needless to add that the general guardian had no power to buy real estate with the

personal property of his ward, of his own motion and without the direction of any court.

The opinion of the learned surrogate who made the decree under review leaves little to be said upon the subject, and we think that the order of the Appellate Division affirming his decree should be affirmed, with costs.

All concur.

Order affirmed.