EMPIRE STATE SURETY CO. v. COHEN.

(Supreme Court, Special Term, Kings County. January 1, 1916.)

1. GUARDIAN AND WARD ⊜⟶175—LIABILITY OF GUARDIAN.
   Where a guardian unlawfully invested his ward's moneys in real estate without the sanction of the Supreme Court, his act amounted to a devastavit, for which he and the surety on his bond were liable.
   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 600–606; Dec. Dig. ⊜⟶175.]

2. GUARDIAN AND WARD ⊜⟶64—WARD'S PROPERTY—LIABILITY.
   One knowingly receiving the funds of an infant in payment of an unlawful purchase by the guardian is liable to the infant, and the form of the check or draft of itself may charge him with notice of the unlawful diversion.
   [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 294–299; Dec. Dig. ⊜⟶64.]

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. GUARDIAN AND WARD ⬤⇒53—INFANT'S PROPERTY—LIABILITY FOR.

Where a guardian used his ward's moneys in making an unauthorized purchase of real estate, taking title in his own name, defendant, who sold the real estate and received the ward's money with knowledge, is liable to the ward, notwithstanding the investment was made with intent to benefit the ward.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 232–241; Dec. Dig. ⬤⇒53.]

4. SUBROGATION ⬤⇒7—NATURE OF RIGHT.

In general, a surety on the bond of a fiduciary, as a guardian, is entitled to subrogation, which may be enforced against all persons claiming under the fiduciary with knowledge of the facts, or that the fiduciary was committing a breach of trust.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 58, 77, 83, 92; Dec. Dig. ⬤⇒7.]

5. GUARDIAN AND WARD ⬤⇒53—CONTRACTS—CONSTRUCTION.

Where a guardian contracted in his own name as such to purchase realty for the benefit of his ward, the guardian alone is bound by the contract, the sanction of the court not having been obtained; consequently one who received the ward's money in payment of the real property is liable, as he must be presumed to have known the law and to have known the payment was made on the guardian's own behalf.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 232–241; Dec. Dig. ⬤⇒53.]

6. GUARDIAN AND WARD ⬤⇒53—INVESTMENT BY WARD—AUTHORITY OF COURT OF CHANCERY.

The Supreme Court, as successor to the old Court of Chancery, may ratify an unauthorized purchase of real estate by an infant's guardian.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 232–241; Dec. Dig. ⬤⇒53.]

7. CONVERSION ⬤⇒20—PURCHASE OF LAND BY GUARDIAN—EFFECT OF.

Where moneys of an infant are invested in land without authority of court, title being taken in the name of the guardian, the character of such funds as personalty is not changed.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. §§ 3, 27, 52–55; Dec. Dig. ⬤⇒20.]

8. GUARDIAN AND WARD ⬤⇒53—PURCHASES BY GUARDIAN—RATIFICATION.

An infant's guardian without authority invested his ward's moneys in real estate, taking title in his own name. Thereafter the guardian, in a proceeding under Laws 1815, c. 106, as amended by Laws 1827, c. 203, filed a petition in the Supreme Court ostensibly for the sale of the infant's property. This was granted, and the seller of the property in a subsequent proceeding claimed that the unauthorized purchase was ratified. Held, that as the statute applies only to cases where the infant is seised of the property, and as the character of the infant's moneys as personalty was not changed by the unauthorized investment, the order authorizing the guardian to make the sale was not a ratification of the unlawful purchase.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 232–241; Dec. Dig. ⬤⇒53.]

9. GUARDIAN AND WARD ⬤⇒118—DIVERSION OF INFANT'S PROPERTY—DEFENSES.

Where a guardian without authority purchased land for the benefit of his infant ward, using the ward's moneys, the right of the infant or his substituted guardian to recover the payment is not affected by the laches of the guardian's surety in demanding an accounting.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 411–418; Dec. Dig. ⬤⇒118.]

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. ASSIGNMENTS ☜⟶100—EFFECT OF ASSIGNMENT.**

In such case, where the surety made good the amount diverted and received an assignment from the infant's substituted guardian, its right to recover the amount paid the vendor cannot be defeated upon the theory of laches; such defense not being admissible against its assignor, and the surety not depending on the equity of subrogation.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 177, 180; Dec. Dig. ☜⟶100.]

**11. GUARDIAN AND WARD ☜⟶137—LIABILITY OF GUARDIAN.**

A guardian is a trustee of his ward's property, and is liable to account so long as the property remains in his possession and unaccounted for.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 461, 462, 464, 469, 473, 475; Dec. Dig. ☜⟶137.]

**12. GUARDIAN AND WARD ☜⟶53—UNAUTHORIZED DIVERSIONS—RIGHT OF RECOVERY.**

An infant's guardian without authority invested his moneys in a parcel of land heavily incumbered. This parcel was exchanged for another parcel also incumbered, and after other exchanges the infant's equity of redemption was swept away. *Held*, that an action against the original vendor to recover the moneys paid him, which he received with knowledge that they belonged to the infant ward, could not be defeated on the ground that such diversion caused no loss to the infant, the property being sold for more than was paid for it, for there was no actual sale, and the transaction culminated in entire loss of the funds.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 232–241; Dec. Dig. ☜⟶53.]

Action by the Empire State Surety Company against Samuel Cohen. Judgment for plaintiff.

Hirsh, Newman & Reass, of Brooklyn, for plaintiff.
Leon Lewin, of New York City, for defendant.

BENEDICT, J. This action was, by consent of counsel, tried without a jury; the facts being submitted upon oral admission or written stipulation. The plaintiff corporation, which was surety upon the bond furnished by a general guardian, and which has made good to the ward's estate certain sums of money with which the account of the guardian has been surcharged, sues the defendant to recover the sum of $5,750, with interest, alleged to have been wrongfully paid to the defendant by the guardian. The ward recovered, in August, 1905, in an action for personal injuries due to negligence, a judgment for upwards of $19,000, out of which his general guardian made various payments, the greater part of which were authorized by the Surrogate's Court, and which amounted to about $10,000, so that the general guardian, on or about January 1, 1906, had on deposit in a trust company a balance belonging to the ward amounting to some $9,500.

[1] Out of the funds of the ward the guardian drew two checks to the defendant's order—one dated on January 15, 1906, for $1,000; the other dated on February 15, 1906, for $4,750. These checks were signed by him as guardian of the ward. It is not disputed that the defendant received these checks knowing they were drafts against the minor's funds in the trust company, and that for them he executed

a conveyance to the guardian, as such, of two parcels of real property known as Nos. 15 and 17 West 117th street, New York City, for an expressed consideration of $100 and other valuable consideration, but in reality conveying the equity in said property over mortgages aggregating $52,000 in amount. In this conveyance the defendant's wife joined. Subsequently the property so acquired was wasted by the guardian in various consecutive exchanges, and finally dissipated. The real property thus taken by the guardian as an investment of the ward's estate was unlawfully acquired by the guardian, and his act in purchasing it as he did, without the sanction of the Supreme Court, the successor of the Court of Chancery, amounted to a devastavit, for which he and the surety upon his official bond became liable to the infant. White v. Parker, 8 Barb. 48, 53; Matter of Bolton, 20 Misc. Rep. 532, 46 N. Y. Supp. 908, affirmed 159 N. Y. 129, 53 N. E. 756. The ward could not by any act of his during minority ratify the unlawful act of his guardian. Bellinger v. Roatstone, 6 Wkly. Dig. 69.

[2] That a person having knowingly received the funds of an infant in payment of an unlawful purchase by the guardian is liable to the infant in an action at law is too well established to admit of doubt; and that the form of the check or draft may of itself be sufficient to put him upon inquiry as to the infant's ownership of the money is well established, and is not disputed by the defendant here. Empire State Surety Co. v. Nelson, 141 App. Div. 850, 126 N. Y. Supp. 453; English v. McIntyre, 29 App. Div. 439, 51 N. Y. Supp. 697; Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435; Cohnfeld v. Tanenbaum, 176 N. Y. 126, 68 N. E. 141, 98 Am. St. Rep. 653; Boisseau v. Boisseau, 79 Va. 73, 52 Am. Rep. 616.

It appears from the evidence that in a certain proceeding in the Surrogate's Court in New York county the guardian was, by a decree entered on April 4, 1910, removed from office and his letters were revoked, and by a further decree of said court, dated July 11, 1911, his account was surcharged with the sum of $6,981.03 by reason of such unauthorized investment. It also appears that the plaintiff, as surety on the bond of such guardian, was obliged to pay said sum to the persons who were appointed guardians in the place of the guardian so removed, and also that the plaintiff received an assignment from the new guardians of their and the infant's cause of action against the defendant arising out of the transaction above mentioned. These facts are relied upon by the plaintiff as a basis for holding the defendant liable, either for money had and received (Empire State Surety Co. v. Nelson, 141 App. Div. 851, 126 N. Y. Supp. 453) or for conversion (Squire v. Ordemann, 194 N. Y. 397, 87 N. E. 435); and the facts being admitted by the defendant, I should be disposed to agree unhesitatingly with the contention, were it not for the further facts to which attention must be given. The defendant urges several grounds for defeating the plaintiff's claim. These will be considered in their order.

[3] In the first place, the defendant contends that, even admitting the general proposition to be true that one who receives moneys belonging to an infant, with knowledge or notice of their ownership, is

obliged to restore such moneys to the infant if they have been used by the guardian to pay his personal debt or obligation, there is no such obligation in the present case, because, he urges, the proofs show that the moneys were invested in certain real property for the infant's benefit, and not, as alleged in paragraphs XII and XIX of the complaint, to pay the personal debt of the guardian. But this contention rests upon too restricted a view of the relations between the parties. Such a diversion of the infant's property from its lawful use by the fiduciary renders the third party receiving it with knowledge or notice equally culpable as the trustee, and equally liable to the infant for any resulting loss, even though such diversion were intended to benefit the trust estate. Boisseau v. Boisseau, and English v. McIntyre, supra.

[4] The plaintiff is entitled to such a judgment or to such relief as the infant himself would be entitled to upon the admitted facts, and its claim rests, not only upon the principle of subrogation to the infant's rights, but also upon its rights as the transferee of the infant's rights by assignment as hereinafter mentioned. The general rule governing subrogation of a surety is that the right of a surety to subrogation can be enforced against all persons claiming under the principal with notice of the facts, actual or constructive, or with knowledge that the principal is committing a breach of trust in disposing of property. 37 Cyc. 428. And see Mathews v. Aikin, 1 N. Y. (1 Comst.), 595, and Empire State Surety Co. v. Nelson, supra.

[5] Apart from these considerations, it may also be said that the guardian, at least so far as the second payment was concerned, was discharging his own obligation. He undertook to buy the property, not in his ward's name, but in his own as guardian. His ward was clearly not liable for the purchase price under the executory contract. That could not have been enforced against the ward. The guardian assumed the obligation to the vendor (this defendant); and he could not have evaded that liability upon the principle of an agent acting for a disclosed principal. He personally undertook that his ward— admittedly incompetent to contract on his own behalf—would pay the whole or the balance of the purchase price, and thus he himself became liable as the principal debtor. See Sherman v. Wright, 49 N. Y. 227, at foot page 231.

As the proof shows that the guardian handed over his ward's moneys to the defendant in known violation of his duty as guardian, because he did not first obtain the authority of this court before using the ward's personal estate for the purchase of real property, and did not even take the deed to the property from the defendant in the ward's name, he was properly compelled by the decree of the Surrogate's Court to make good the deficiency caused by his departure from the authorized and legal mode of dealing with his ward's funds. The defendant is presumed to know the law governing such a case, and he also must suffer the consequence of accepting from the guardian the moneys of the ward unlawfully.

"Where the property rights of infants are concerned, courts will exercise the most vigilant care in protecting their interests, and will hold guardians and all who are engaged in managing or disposing of their property to a

rigid adherence to principles of good faith not only, but to a strict perform-
ance of every duty." Howell v. Mills, 53 N. Y. 326. See, also, 2 Perry on
Trusts (6th Ed.) § 618.

[6] Secondly. The defendant next contends that, notwithstanding
the real property was purchased by the guardian from him, and the
infant's funds were paid over to him by the guardian, without first ob-
taining leave of the Supreme Court, yet that court ratified or sanc-
tioned such unauthorized purchase by subsequently giving leave to the
guardian to sell the property so purchased. The facts are that, after
the defendant had conveyed the real property by deed to the guardian
as such, the guardian presented his petition to the Supreme Court, in
the First judicial district, in March, 1908, praying for leave to ex-
change the said real property, Nos. 15 and 17 West 117th street, for
other real property owned by one Miller. In this petition the infant
joined. The petition did not disclose to the court the manner in which
the infant had acquired an interest in defendant's property, and the
proceeding was conducted as if the infant were seised in fee of the
real property referred to. Upon the petition so made by him, the fa-
ther and guardian of said infant was appointed special guardian for
the infant in such proceeding, and gave a surety company bond to the
infant therein in the penal sum of $20,000. Thereafter a reference
was had to inquire into the merits of the application, and the referee
approved the application for such exchange. This report was con-
firmed by the court by order dated April 24, 1908.

But, it being discovered that such an exchange was unlawful, the
guardian, in July, 1908, presented a petition stating the facts and show-
ing that the transaction, although it had been consummated, was ques-
tioned as of doubtful validity, and asking that the proceeding be re-
ferred back to the referee, to take further proofs and to consider
whether a sale was advisable. Thereupon an order was, by the same
court, made referring it back to the same referee to inquire further
into the merits of the application. The referee reported in favor of
a sale of the said real property to the same person with whom the
contract for exchange had been made, and this report was approved
by the court. Then the special guardian reported that he had entered
into an agreement with the same person for a sale of the property for
$10,000 cash above the mortgage liens of $50,000 thereon, and this
report was confirmed, and the special guardian directed to execute the
conveyance upon receiving the purchase money.

As a matter of fact, it appears that the second proceeding was a
mere pretense, by which the guardian misled the court as to the real
situation. The transaction was not a valid sale by the special guard-
ian at all, but an exchange of the property for other real property, the
title to which, likewise, was not taken in the infant's name, but in the
name of a son of the guardian, and the guardian received only a small
fraction of the cash consideration mentioned in his contract and speci-
fied in the order of confirmation.

It is upon this state of facts that the defendant claims that the Su-
preme Court ratified or sanctioned the original unauthorized act of the

guardian in investing the ward's funds in real property without first obtaining leave of the court. This contention makes it necessary to consider two questions:

First. Has this court, as the successor of the Court of Chancery of this state, the power to sanction or ratify by subsequent order, made during the infant's minority, the unauthorized act of the guardian in respect of such an investment? There seems to be some difference of opinion in different jurisdictions upon this subject. The earlier English rule seems to have allowed such sanction, where it was shown to have been for the advantage of the infant's estate (see 2 Eden, 152, 153, and Ambl. 419); but in Perry on Trusts (6th Ed.) § 605, referring to the English rule, the writer says:

"In other and later cases the jurisdiction and power of the court to change the nature of an infant's property have been denied, and it seems now to be the established rule that such change cannot be made even for the advantage of the infant."

In section 606 he says:

"In the United States a guardian or trustee cannot convert an infant's personalty into real estate."

And further on he says:

"But a trustee or guardian should not venture to expend the ward's personalty in that manner without first obtaining the sanction of the court; for, if an unauthorized act is first done, the court will not sanction it, though in the particular case it might be proper, if first sanctioned by the court; for the principle is that trustees and guardians of infants should take no important step without leave of the court, and the court will punish such action taken on their own responsibilty, by refusing to sanction the expenditures"—citing Worth v. Curtis, 15 Me. (3 Shep.) 228; In re Miller's Estate, 1 Pa. 326; Mason v. Wait, 4 Scam. (Ill.) 127.

In Miller's Estate, 1 Pa. 326, the court said that the judge in the orphans' court was wrong in holding that an assumption of authority to convert infant's personalty into realty might be subsequently sanctioned.

"Power to convert a ward's estate ought not to be assumed in any case; and to sanction it under any circumstances would encourage guardians to act independently of the court. Besides, in a hard case, a judge would be disposed to sanction what he would not have authorized."

See, also, Hinds' Estate, 183 Pa. 260, 265, 38 Atl. 599.

The same doctrine was applied by the Supreme Court of Virginia in the case of Boisseau v. Boisseau, supra, and other authorities can be found in the notes in Cyc. and the Am. & Eng. Ency. of Law; but in the state of New York the current of authority is clearly in favor of the right of sanction, although the necessity for exercising the right in the most careful and guarded manner and solely for the benefit of the infant is pointed out.

Surrogate Comstock, in Re Bolton, 20 Misc. Rep. 532, at page 538, 46 N. Y. Supp. 908, at page 912, affirmed 159 N. Y. 129, 53 N. E. 756, says:

"In the broadest sense the old Court of Chancery possessed and exercised jurisdiction over the person and property of infants. They were its wards, and in the exercise of its equity power, as we have seen, it could, and often did, direct such uses of the infant's funds, or sanction it after it was done, provided the infant had not attained his majority. This power was transferred to the Supreme Court, and is now held by it, even over guardians appointed by the Surrogate's Court. Dayton on Surrogates (5th Ed.) 619, and cases cited."

See, also, Matter of Decker, 37 Misc. Rep. 527, 76 N. Y. Supp. 315.

Dayton refers to Kent as authority for his statements and the latter states (2 Kent's Comm. p. 230):

"The guardian must not convert the personal estate of the infant into real, or buy land with the infant's money, without the direction of the Court of Chancery. The power resides in that court to change the property of infants from real into personal, and from personal into real, whenever it appears to be manifestly for the infant's benefit. It is said that the latter power may be exercised by a guardian, or trustee, in a clear or strong case, without the previous order of a court of equity; but the infant, when he arrives at full age, will be entitled, at his election, to take the land or the money, with interest, and, if he elects the latter, chancery will take care that justice be done, by considering the ward as trustee for guardian of the lands standing in his name, and will direct the ward to convey."

See, also, White v. Parker, 8 Barb. 48, 53.

In Eckford v. De Kay, 8 Paige, 89, 95, Chancellor Walworth said:

"As the guardians had vested the fund, in which this infant daughter had an interest, in the purchase of this real estate without the previous sanction of the court, she would of course have the right, when she became of age, if this court in the meantime had not made the election for her, to repudiate the deed, and to claim her share of the $27,000 and interest, from the estates of her guardians, or from their sureties."

This case was affirmed on appeal in 26 Wend. 29.

In Sherman v. Wright, supra, the court, in an action for specific performance of a contract for the lease of property belonging to an infant, says:

"It was incumbent upon the plaintiff to show affirmatively that the contract sought to be enforced was such a contract as the guardian, acting for the best interests of the infant, might properly have made, and such as the court would have approved and authorized to be made, had authority to make it been asked."

[7, 8] I conclude, therefore, that the right of sanction exists; and the next question to be considered is whether such sanction can be deemed to be implied in the order of this court granting leave to sell the property so as aforesaid acquired, without the previous authorization of this court. I think it is clear that it cannot. The proceeding was one ostensibly for the sale of infant's real estate under the statute. Laws 1815, c. 106, and its amendments. This act, however, only applies to cases where the infant was seised of real property. It was under this act that the Court of Chancery acquired its jurisdiction to sell the real property of infants; it not possessing that jurisdiction inherently, except over the equitable interests of the infant. Anderson v. Mather, 44 N. Y. 249 (citing Cochran v. Van Surlay, 20 Wend. 375, 32 Am. Dec. 570 and Pitcher v. Carter, 4 Sandf. Ch. 1). The funds of the infant, invested without authority by the guardian in real prop-

erty, the title to which was taken in his name as guardian, did not change their character as personalty. Lockman v. Reilly, 95 N. Y. 64. The conveyance had the same effect as if it had been made to the guardian in his individual name, and he had full power of disposition over it. 95 N. Y. 71 and cases there cited. See, also, Forman v. Marsh, 11 N. Y. 544, Horton v. McCoy, 47 N. Y. 21, 26, and Rogers v. Dill, 6 Hill, 415.

Hence, even assuming that the proceeding had been taken in good faith and not as a deception upon the court, I think it would not support the contention. Sanction, either actual or inferential, cannot be conclusively assumed against the infant under such circumstances; it must be the result of a judicial determination in a proceeding where the question is necessarily involved and where the court is truthfully advised that the question is before it. Any other doctrine, or less rigid rule, would result in obvious danger to the interests of infants, and place them at the mercy of unscrupulous guardians, who might, by subterfuge, succeed in obtaining from the court judicial sanction for their unauthorized acts, and thus frustrate the infant's right to inquire into their acts upon attaining majority.

[9, 10] The third contention of the defendant is that the plaintiff was guilty of laches, in that it did not require the guardian to file annual accounts, whereby the wrongful use of the ward's property would have been disclosed, and that for some time after actual notice came to plaintiff of the diversion of the sum in question, plaintiff took no steps to protect itself. It is claimed that such delay should preclude the plaintiff from recovering in this action because, had the plaintiff proceeded promptly on discovering the maladministration to have the letters of guardianship revoked and to compel the guardian to account, the claim now made against defendant might have been made before the property bought from the defendant had been disposed of; and defendant, if compelled to refund the money received, would have been entitled to a reconveyance of the premises. Such reconveyance is, of course, now impossible by reason of the guardian's subsequent transactions hereinbefore referred to. If the plaintiff's claim depended wholly on the doctrine of subrogation, there would be some force in this contention upon general equitable principles—although no authority in point is cited, nor have I been able to find any such—were it not for the fact that the defendant himself was a party to the wrongful or unauthorized act, and, as such, liable for the consequences thereof. But, in addition to this, the plaintiff claims under an assignment from the substituted guardians of the ward, and thus its case is brought within the doctrine laid down in Empire State Surety Co. v. Nelson, supra. The right of the ward, or his substituted guardians, to recover of defendant was, of course, not prejudiced by plaintiff's laches, if any existed, and plaintiff, as assignee, is not subject to defenses not available against his assignors. This is made plain by the decision of the Court of Errors in Eckford v. De Kay, 26 Wend. 29, 39.

[11] The guardian was trustee of the ward's property, and so long as the property remains in his possession as guardian, and unaccounted

for, he must remain liable to account. Matter of Camp, 126 N. Y. 377, 389, 27 N. E. 799. And the trust is an express trust. Mitchell v. Mitchell (Appellate Division, First Department) 156 N. Y. Supp. 76.

[12] It remains to consider only the last contention of defendant, which is whether the loss to the estate of the infant was the result of the wrongful diversion of the funds paid to defendant for the equity in his property. To determine this question, it is necessary to refer again to the subsequent dealings of the guardian with the property bought from the defendant. The details of the first exchange have already been set forth. After this there were several exchanges, and finally a foreclosure, which swept away the equity, if any, in the property last acquired as the result of the several exchanges. I think that, notwithstanding the loss to the estate did not become apparent until after the later transactions referred to, the defendant is nevertheless liable. In Suarez v. De Montigny, 1 App. Div. 494, 37 N. Y. Supp. 503, affirmed on opinion below in 153 N. .Y. 678, 48 N. E. 1107, it was held that the purchaser of a mortgage from a trustee without the consent of the beneficiary, which was required by the terms of the trust instrument, was not entitled to foreclose the same, although he had paid full value, and the money received was afterwards misappropriated by the trustee. In the case at bar the purchase of this property was the beginning of a period of unlawful investment. The money was never restored to the infant's estate, but was continuously invested in unauthorized property. Defendant seeks to make a point based on the claim that the premises purchased of him were sold for $2,000 more than was paid for them, and hence no loss could have resulted to the estate from the original purchase. But the fact is shown to be, as previously stated, that the premises were never sold for any price at all, but merely exchanged for other property, the value of which is not proven, and which ultimately ceased to possess any value whatsoever.

Under the circumstances shown by the evidence, I conclude that the plaintiff is entitled to the judgment prayed for, with costs.