New York County.—HON. D. C. CALVIN, Surrogate.—March, 1877.

## TORRY *v.* FRAZER.

*In the matter of the Accounting of* JAMES FRAZER, *as guardian, of* SARAH TORRY, *and* JAMES TORRY, *minors.*

A guardian who invests the funds of his ward on personal securities, assumes the risk of loss thereby.

He must also bear the expenses of litigation, in efforts to collect funds so invested.

THIS was a proceeding for the accounting of James Frazer, as guardian of Sarah Torry, and James Torry, minors.

The guardian filed his account to which objections were interposed by the counsel for the wards, and the matter was referred to Samuel Marsh, Esq., as auditor. The auditor filed his report to the effect that the amount of assets which came to the hands of the guardian was $5,481.62, and that interest at 5 per cent., being the rate of interest on securities in which trust funds should be invested, amounted to $716.46 aggregating the sum of $6,198.08, and that the only deductions, were for commissions, $179.26, necessary expenses $87.24, leaving a balance in the guardian's hands of $5,930.38. He also reported that a reasonable allowance to the guardian's attorneys would be $150, for all services rendered by them as such.

The guardian filed exceptions to the report raising the objections that the auditor erred in charging interest on money received; that he erred in disallowing the guardian's disbursements of $105.93, in the suit by him

against Bogart and others ; $150, paid his counsel for making the account, and going to New York, and $150 additional paid his counsel for attending the accounting before the auditor, and for expenses, $85.75, in two trips to New York city.

It appeared by the evidence that the guardian resided in Delaware county, in the state of New York, and that he invested some of the funds belonging to his ward in indorsed promissory notes, which, after somewhat expensive litigation, were lost, and he charged in his accounts the expenses of that litigation.

ADEE & SHAW, *for the guardian*
S. J. McKEE, *in opposition.*

THE SURROGATE.—The counsel for the guardian claimed that the loans on promissory notes indorsed, &c., was a proper exercise of the authority of the guardian, and that the loss resulting therefrom should fall upon the estate, and cites *White* v. *Parker* (8 *Barb.*, 48), as authority for such an investment; but an examination of that case does not sustain the point. In that case it was charged that the guardian had disposed of some of the trust property on credit, and taken notes or other personal obligation, for the purchased price in his own name. The learned judge says, that by so doing the guardian made the notes or obligation his own, and must account for them at the value of the property for which he took them. It is true that on page 53, the justice uses this language : " He could not take the notes, or other securities for money belonging to his ward in his own name, and if he does, he converts the property to his own use, and is *prima facie* accountable for it." The case of *Hart* v. *Ten-Eyck* (2 *Johns. Ch.*, 76), it is claimed, recognizes such authority; but in that case no such question arose. Doubtless, the expression

to which attention was intended to be called by the counsel is to be found on page 75, where, in speaking of the duties of administra'ors and trustees, the learned Chancellor says : " I shall be always extremely averse to hold such characters responsible, on slight grounds, or where there is evidence of a fair and upright intention." The case of *Lowell* v. *Minott* (20 *Pick.*, 116), does doubtless sustain the views of the counsel upon this point.

The case of *King* v. *Talbot* (40 *N. Y.*, 76), cited by the same counsel, seems to be entirely adverse to the principle sought to be established in behalf of the guardian in this case. There it is stated that the English rule is settled, that a trustee holding funds to invest for the benefit of a *cestui-que-trust*,is bound to make such investments in the public debt, or in loans for which real estate is pledged as security, even in cases where discretion is left with the trustee. And the court held that an investment of the trust funds in stock of the Delaware and Hudson Canal Company ; of the New York and Harlem Railroad Company; of the New York and New Haven Railroad Company ; of the Bank of Commerce ; of the Saratoga and Washington Railroad Company, was unauthorized. In *Ackerman* v. *Emmott* (4 *Barb.*, 626), it was adjudged that in England, where trustees were invested with discretion they are confined in its exercise to real and government security ; and after an examination of several authorities it is held, that they recognize the expediency of retaining that rule in this state, and the court held in that case that the rule prevailed in this state, and that it authorized a trustee to loan on real securities and public stocks of the State of New York, or of the United States, or to the New York Life Insurance and Trust Company, and that where that limit is departed from

neither good faith, nor care, nor diligence will protect trustees in the event of actual loss, that they assume the risk, and are responsible accordingly, and this principle seems sustained by the case of *King* v. *Talbot*, above cited.

*Perry on Trusts* (Vol. 2, section 453), states the rule to be that "trustees cannot invest trust moneys in personal securities," citing a large number of authorities, and in section 456, it says, that this rule prevails in New York, and Pennsylvania, but that in Massachusetts it is otherwise.

In *Smith* v. *Smith* (4 *Johns. Ch.*, 280), it was held that if a guardian, or other trustee, lends the money of the *cestui que trust* without due security, he will be responsible in case the borrower becomes insolvent, and the Chancellor, after discussing the question whether notes taken by the guardian which appeared to be good, should be credited to him, says: " In a case like the present, where the sums were comparatively small, and the habit of dealing according to the practice which we have reason to presume was pursued by the testator, and especially where the debtors were originally sound, and continued so to the time of taking the account by the master, I am induced to think, we may consistently with the policy and doctrine of this court, credit the guardian with the notes which he has ready to surrender. But in adopting this course, I mean to be understood, that if a guardian, or other trustee, loans money without due security, he must be responsible in case of insolvency."

It is apparent that the weight of authority in this State is against the right of trustees to loan trust funds upon personal security, and it is to my mind entirely clear, that the guardian of an infant should be held to as rigid an accountability as any other trustee

and Justice MULLETT, in *White* v. *Parker* (above cited), well says: "That this inquiry involves the rights, duties and liabilities of one of the most delicate and important artificial relations known in civilized life; where the guardian is required to exercise a parent's watchfulness, care and solicitude, without a parent's hope; a relation by which not only the pecuniary rights, but the moral character, and all the elements of future respectability, prosperity and happiness of bereaved, unprotected children are confided to the care of one, who, however just and conscientious he may be, is uninfluenced by those affections which nature has so wisely provided for the security of guardians of helpless infancy and inexperienced youth."

From a careful examination of the authorities, and a due consideration of the rights of the infants in this matter, I am of the opinion that the guardian should be held personally responsible for the investment of the ward's money, in the personal securities mentioned, and which has been lost, and that he should also be made liable for the expenses attending the litigation, in efforts to collect the same.

The report of the auditor in this matter should in all things be confirmed.

Order accordingly.