A guardian has no authority to invest personal property of his ward in real estate without the consent of the supreme court.

2. SAME.

   A guardian has no right to invest personal property of his ward in bank stock.

3. SAME.

   A guardian cannot invest money of his ward in a nonresident corporation.

4. SAME—ACCOUNTING.

    A guardian cannot take annual rests in his accounts, so as to allow him commissions at full rates on the balance then found.

5. SAME—COMPENSATION.

    A guardian is entitled to credit for compensation paid an attorney for preparing his final account.

6. SAME—COSTS ON ACCOUNTING.

    Where it was necessary for a ward to file objections to the account of his guardian in order to protect his rights, the guardian is chargeable with costs.

In the matter of the accounting of George G. Decker, guardian. Decree rendered.

J. K. P. Jackson, for guardian.

A. P. Carpenter (F. M. Andrus, of counsel), for petitioner.

GRANT, S. On the 1st day of September, 1891, George G. Decker, of Margaretville, N. Y., was duly appointed guardian of the person and estate of Arthur W. Clark, an infant, then of the age of 12 years, and continued as such guardian until the present time. On the 24th day of March, 1900, the said Arthur W. Clark arrived at the age of 21 years, and on the 19th day of April, 1900, filed a petition to compel the said G. G. Decker to account as such guardian. On the 1st of June, 1900, the said guardian filed his account, and on the same day the petitioner appeared, and filed objections to several items in said account. The principal items objected to were: First. The item of $1,000, alleged to have been invested by the guardian on the 24th day of December, 1897, in the Crosby house and lot, so called, in said village of Margaretville. Second. Two items of $250 each, alleged to have been invested by said guardian in stock of the People's National Bank of Margaretville on the 24th day of December, 1897, and the 27th day of October, 1898, respectively. Third. The sum of $200, alleged to have been paid E. Hunt for a McKinley Mortgage and Debenture bond on the 20th day of November, 1891. Fourth. The petitioner also objected to the items charged in the account for commissions by the said guardian, claiming that the charges for commissions were in excess of those allowed by law. Fifth. Objection is also made to the item of $81, paid J. K. P. Jackson, attorney, on the 10th day of May, 1899; and the petitioner also further asks that the costs and expenses of this accounting be charged against the guardian.

Upon the question as to the item of $1,000 invested in the Crosby house and lot, it is contended by the petitioner that the guardian had no authority in law or otherwise to make such investment without an order of the supreme court. The guardian, on the other hand, contends that such investment is one which might have been authorized by the supreme court, and, having been made by him in good faith, should be allowed to him upon the accounting. In Re Bolton, 20 Misc. Rep. 532, 46 N. Y. Supp. 908, Surrogate Comstock, in writing the opinion, held that the court of chancery originally possessed the sole power to authorize a change of the personal prop-

erty of an infant into real property, and that in the exercise of its equity powers the court of chancery could, and often did, direct such use of the infant's funds, or sanction it after it was done, provided the infant had not attained his majority; that this power was transferred to the supreme court, and is now held by it even over guardians appointed by the surrogate's court. After a careful examination of the cases cited, I am of the opinion that the rule laid down by Surrogate Comstock is the settled rule upon the question of authority of a guardian to invest the personal property of his ward in real estate, and am therefore of the opinion that the item of $1,000, alleged to have been invested in the Crosby house and lot, so called, was made without authority of law, and must be charged against the guardian, with interest from the time of such investment.

2. As to the items aggregating $500, invested in the People's Bank stock of Margaretville, not being a security which the guardian was authorized to invest, such investment was made at his risk. "A guardian who invests in personal security assumes the risk of loss thereby, and he must bear the expenses of litigation in efforts to collect funds so invested." Torry v. Frazer, 2 Redf. Sur. 486. "A guardian has no authority to invest upon personal security, upon bond, promissory note, or other personal security; and if he does he shall be personally answerable if the security prove defective." Dayt. Sur. (3d Ed.) 521; Bogart v. Van Velsor, 4 Edw. Ch. 718, 722; Ackerman v. Emott, 4 Barb. 626. "A guardian should not loan the money of his ward upon personal security." In re Bushnell (Sur.) 4 N. Y. Supp. 472. "The guardian has no right to invest the property of the infant in bank stock." Ackerman v. Emott, 4 Barb. 626. In view of the foregoing authorities, I am of the opinion that the guardian had no legal right or authority to invest the funds of the infant in the People's Bank stock, and therefore those items should be charged against the guardian, with interest from the time such investments were made.

3. It is claimed by the petitioner that the investment of $200 in the McKinley Mortgage and Debenture bond, being a nonresident corporation, was unauthorized by law. It is conceded by the attorney for the guardian in his brief that this investment, being an investment in a foreign corporation, was unlawful, and that the guardian must retain the same, and account to the ward therefor. The guardian's account should therefore be charged with the sum of $200 so invested, together with interest on the same from the time the same was invested.

4. Upon the question of commissions claimed by the guardian the rule seems to have been settled by the court of appeals in the case of Morgan v. Hannas, reported in 13 Abb. Prac. (N. S.) 361. Judge Folger, in writing the opinion, states the rule as follows:

"That annual rests in the accounts of an executor or other trustee cannot be taken for the purpose of allowing him commissions at full rates upon the balance then found. But where annual rests are required by the special direction of a court, for the sake of charging the trustee with interest, or by a rule of court, or by the provisions of statute, then full commissions may be computed upon the amounts, excluding reinvestments of principal."

"Where a guardian invests or reinvests funds he is not entitled to commissions upon such reinvestments, but only upon the interest or income arising from the same." In re Kellogg, 7 Paige, 266.

The guardian, therefore, is entitled to receive 5 per cent. for receiving and paying out $1,000 of the principal sum, 2½ per cent. for receiving and paying out the remaining $4,000 of principal, and 5 per cent. for receiving and paying out the interest or income received by him after the filing of his annual report each year, provided the same did not exceed in any one year the sum of $1,000. In case the amount received in any one year after filing the annual report exceeded the sum of $1,000, then upon the excess the guardian would be entitled to the sum of 2½ per cent. The commissions of the guardian may, therefore, be computed according to the foregoing rule, and the guardian allowed commissions upon that basis.

5. As to the item of $81 paid J. K. P. Jackson, his attorney, for services in the proceeding in which the guardian sought to be relieved from his trust before the ward arrived at the age of 21 years, not being for the benefit of the ward, it should not be allowed the guardian upon this accounting. These services were rendered in a proceeding in which the guardian sought to be relieved from the trust, and were not instituted or conducted in the interest of the ward, but for the sole benefit of the guardian, and whatever compensation is paid the attorney for the said guardian for such services should be paid by the guardian, and not out of the funds of the ward, as the ward was not in any manner responsible for such proceeding, or benefited by it. A general guardian, under ordinary circumstances, would be justified in employing an attorney at a reasonable compensation to prepare his final account; and under the circumstances of this case, taking into account the amount of time employed in the preparation of the account, I should consider the sum of $25 a reasonable allowance for the time necessarily expended in preparing the account, and that sum is hereby allowed. As the contest which arose upon the objections filed to the account was caused solely by the improper items embodied in the account by the guardian, which rendered the contest necessary to enable the ward to recover his rights, the costs of the contest, in my judgment, should be paid by the guardian. "A general guardian will be compelled to pay the costs of a contested accounting where the evidence shows maladministration by him of his ward's estate." In re Kopp (Sur.) 2 N. Y. Supp. 495. In the case at bar it was necessary for the ward to file objections to the account in order to protect his rights. In each instance the items objected to were unlawfully sought to be charged against the ward, and through no fault of the ward; and it would be a great hardship to the ward to be compelled to pay the expense of a contest which he was compelled to institute in order to preserve his rights. "A guardian acting within the scope of his powers, like an executor or administrator, is bound only to fidelity and ordinary diligence and prudence in the execution of his trust. And his acts, in the absence of fraud, will be liberally construed." White v. Parker, 8 Barb. 48. But a guardian is presumed to know the law. Ignorance of the law is no excuse for a

failure to perform his duties according to law. In re Kopp (Sur.) 2 N. Y. Supp. 495. The petitioner is hereby allowed the sum of $70 costs of the contest, to be charged against and paid by the guardion. The guardian, being charged with the amount invested in the Crosby house and lot, with interest from the time of its purchase, should be credited with the amount of rent received and taxes and insurance paid from the time of such purchase.

Decreed accordingly.